James William WHITE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-81-384.

Court of Criminal Appeals of Oklahoma.

Dec. 1, 1983.

Mark Barrett, Sp. Counsel, Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Thomas L. Spencer, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Presiding Judge:

The appellant was charged, tried and convicted of two counts of Murder in the First Degree in the District Court of Delaware County, Oklahoma Case No. CRF–80–132. The jury recommended he be punished capitally for each count, to which he was accordingly sentenced.

Due to the accumulation of errors enumerated herein, this case must be reversed and remanded for a new trial. We therefore deem it unnecessary to set forth the facts of the appellant's crimes.

■ We first find that a venireman was impermissibly excused under the holding of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The pertinent portions of the examination of the venireman in question are as follows:

Q. (THE COURT): Mrs. Graham, in a case where the law and evidence warrant, in a proper case, could you, without doing violence to your conscience, agree to a verdict imposing the death penalty?

A. Could I what now?

Q. In a case where the law and the evidence warrant, in a proper case, could you, without doing violence to your conscience, agree to a verdict imposing the death penalty?

A. Oh. Yes. (Tr. 16–17).

&ast; &ast; &ast; &ast; &ast; &ast;

Q. (DEFENSE ATTORNEY): Are you absolutely sure that, you know, being involved with law enforcement and that for 10 years with your husband, that wouldn't prejudice you a bit?

A. No, I don't. But I would like to be excused because I do believe in capital punishment, but I don't think I can be the one to say.

DEFENSE ATTORNEY: May we approach the bench, Your Honor?

THE COURT: You may.

(Conference at bench out of hearing of jury)

DEFENSE ATTORNEY: I feel like that under the Weatherspoon [sic] Rule that, you know, applies to the State of Oklahoma in full force that they have got to be irrevocably committed to not even considering the death penalty no matter what the evidence would show and that if—

THE COURT: —I disagree with that. It was the opinion of the—I'm not going to get into the interpretation of the Weatherspoon [sic] case because—

PROSECUTOR: —She hasn't asked to be excused yet.

DEFENSE ATTORNEY: She asked that she be excused herself.

PROSECUTOR: I don't think she is entitled to do it.

THE COURT: You will have to challenge for her cause for the record.

DEFENSE ATTORNEY: Okay.

(Conference completed)

Q. They will ask you more about that later.

A. Okay. (Tr. 75–76).

\* \* \* \* \* \*

VOIR DIRE EXAMINATION BY THE PROSECUTOR:

Q. Mrs. Graham, you said, I believe, in response to one of Mr. Moss's questions, that you believe in the death penalty but you don't think you are the person that ought to impose it, is that correct?

A. Right.

Q. As I said before, possibly the questions that the Judge asks aren't that easily understood, because the law itself sometimes will—it sounds like they are involved in a little double talk. But he asked you in a case where the law and evidence warrant, in a proper case, could you, without doing violence to your conscience, agree to a verdict imposing the death penalty?

A. I thought I could but I don't believe I can.

Q. Let me ask you a second question. If you found beyond a reasonable doubt that the defendant was guilty of murder in the first degree, and if, under the evidence, the facts and circumstances of the case, the law would permit you to consider a sentence of death, are your reservations about the death penalty such that regardless of the law, the facts and circumstances of the case you would not inflict the death penalty?

A. No, if I didn't think it was right. If I thought he was proven right—

Q. —No. What I'm asking you is, if the State proved—

A. Well, if the state proves.

Q. Beyond a reasonable doubt that the defendant was guilty of murder in the first degree and that the evidence, facts and circumstances would permit you to consider a sentence of death are your reservations about the death penalty such that regardless of the law, the facts and circumstances of the case you would not inflict the death penalty?

A. I just don't know.

PROSECUTOR: I will challenge her for cause, Your Honor, if she doesn't know.

DEFENSE ATTORNEY: Your Honor, I object.

THE COURT: Well, let me before I make a ruling.

VOIR DIRE EXAMINATION BY THE COURT:

Q. Mrs. Graham, you understand that it is very important in this matter, in view of the fact this is a capital offense and that one of the alternative punishments in this case is death, that you be qualified to impose the death penalty if the evidence and the facts in the case would warrant that and you are convinced beyond a reasonable doubt that the defendant is guilty? Now, if you don't feel that you could in good conscience do that without violating your conscience, regardless of what the evidence is, then, I'm going to have to let you off the jury. Now, is that what you are telling the court?

A. Yes.

Q. That you are not certain—

A. —Yes.

Q. —that you could vote for the death penalty if the evidence overwhelmingly showed the defendant was guilty and you believed him guilty?

A. I believe in it and I think we will have to have it. But I just don't know if I could be the one to say.

Q. You just don't know?

A. To vote. No.

PROSECUTOR: Your Honor, I think she should have to say either yes or no whether she can for the record.

Q. Would you be willing to say yes or no, Mrs. Graham? I would like to—

A. —What is that—

Q. Whether you could, if the facts and evidence and circumstances, after all the evidence is in, if you were convinced beyond a reasonable doubt that this defendant was guilty of this crime, are you telling the

court that even under those circumstances you could not vote in favor of the death penalty?

A. Well, I just don't know. I would almost have to see it. I don't—I can't—

Q. Well, you realize, you know, that you can't see it?

A. Right, I realize that.

Q. Because the act is already done.

A. I don't know if it would be on my conscience or not. I just don't know.

Q. Well, are you saying you don't know or do you mean that you either could or you couldn't?

A. Yeah.

Q. Well, which?

A. I just couldn't, I don't believe.

Q. You don't believe you could?

A. Huh-uh.

Q. Are you saying, no, that you couldn't regardless of what the facts are, regardless of what the evidence is that you could not vote in favor of the death penalty?

A. Well, I just—it just would have to be absolutely proven.

Q. Well, of course, you are the finder of the facts. The jury is the fact finder. You will have to be—it will have to be proven, the burden is on the state to prove the guilt of this defendant, or the burden is on them to prove their case against him beyond a reasonable doubt, and beyond a reasonable doubt is for each juror to determine in their own mind. That is something you, as a finder of the fact, have to resolve in your own mind.

A. I just think it would be on my conscience.

Q. Well, are you telling the court that—

A. —That I would rather not be.

Q. But your reservations about the death penalty are such that you could not vote in favor of it regardless of the law and the evidence?

A. I don't want to be the one to say.

Q. Pardon?

A. I don't want to be the one to say.

THE COURT: I have nothing further. If you want to make a record on this, Mr. Moss, you may do so.

DEFENSE ATTORNEY: Okay. I'm assuming that you are going to—she is going to be dismissed for cause?

THE COURT: I intend to sustain the objection—or the challenge of the state, yes.

DEFENSE ATTORNEY: Okay. Yes, Your Honor, I feel like that under the case of Weatherspoon [sic] v. Illinois is now the law of Oklahoma and Washington vs. State and in that case the Supreme Court states that a juror must be irrevocably committed to a proposition and not only that must be able to say that they cannot subordinate their personal view of what they perceive to be their duty, and she has not gone so far as to say that she cannot subordinate her views. She must also state that she—she must unequivocally state that she would automatically vote against it no matter what the trial reflected and I don't believe she has gone that far. Under the circumstance she should not be excused for cause.

THE COURT: The objection is overruled. I'm going to excuse you, Mrs. Graham, from the panel. (Tr. 81–86).

The above excerpt reveals the trial court exercised a commendable amount of patience and diligence in discerning whether Mrs. Graham was qualified to sit on the appellant's jury under *Witherspoon,* supra. It is unfortunate that Mrs. Graham persisted in giving equivocal answers even after being informed of the necessity that she be definite. It is obvious that she had great reservation concerning her willingness and ability to consider voting to impose the penalty of death by virtue of the fact that she raised the subject in her response to a question addressed to an entirely different matter. However, in view of the total discourse, we cannot say that her attitudes toward the death penalty were such that 1) she would have automatically voted against the imposition of capital punishment without regard to any evidence that might have been developed at trial, or 2) she would

have been prevented from making an impartial decision as to the appellant's guilt. *Witherspoon,* 88 S.Ct. at 1777, n. 21.

■ As was stated in *Witherspoon,*

The most that can be demanded of a venireman in this regard is that he be willing to *consider* all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings. If the voir dire testimony in a given case indicates that veniremen were excluded on any broader basis than this, the death sentence cannot be carried out ... 88 S.Ct. at 1777, n. 21.[1] (Emphasis original).

The State argues that Mrs. Graham's equivocal responses were analogous to the responses of two veniremen in *Davis v. State,* 665 P.2d 1186 (Okl.Cr.1983).[2] In that case, however, the leading questions asked by counsel for both sides served to confuse the matter. The majority of this Court determined from a review of the examinations of the veniremen in their totality that the veniremen's answers satisfied the *Witherspoon* concerns. In the present case, however, despite the trial court's painstaking efforts, Mrs. Graham did not give a sufficiently definite response to disqualify her as a juror. See, *Coleman v. State,* 670 P.2d 596 (Okl.Cr.1983).

The State has also argued that Mrs. Graham's responses were quite similar to those made by a venireman in *Washington v. State,* 568 P.2d 301 (Okl.Cr.1977). This Court's reasoning in that case, however, was based on *Justus v. State,* 542 P.2d 598 (Okl.Cr.1975), which held that *Witherspoon* did not apply to 21 O.S. §§ 701.1 to 701.6 (now repealed). In *Justus,* we stated that

since the death penalty was the only possible punishment for one convicted of Murder in the First Degree under 21 O.S. §§ 701.1 to 701.6 (now repealed), a venireman could be properly excused on grounds less than required under *Witherspoon,* because the concerns affected his ability to impartially determine guilt. *Riggs v. Branch,* 554 P.2d 823 (Okl.Cr.1976), and the Supreme Court cases cited therein; the repeal of 21 O.S. §§ 701.1 to 701.6; and the enactment of 21 O.S.1981, § 701.7 et seq. render inapplicable *Justus* and *Washington* to *Witherspoon* issues under the present statute.

The State has also suggested that this Court adopt a "harmless error" rule to the improper exclusion of veniremen under *Witherspoon* whenever the State fails to exercise all of its peremptory challenges, as it did in the present case.

Shortly after *Witherspoon* was decided by the United States Supreme Court, the Supreme Court of Illinois held in *People v. Moore,* 42 Ill.2d 73, 246 N.E.2d 299 (1969) that the improper exclusion of eight jurors under the *Witherspoon* holding was not reversible error, because the State had a sufficient amount of unexercised peremptory challenges remaining to have been able to remove all eight jurors. The Supreme Court of the United States granted certiorari to hear this issue, among others in that case. *Moore v. Illinois,* 403 U.S. 953, 91 S.Ct. 2280, 29 L.Ed.2d 864 (1971). However, before the case was decided, the Supreme Court decided *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Although it decided other issues presented in *Moore v. Illinois,* supra, it held that *Furman* rendered the *Witherspoon* issue moot. *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).

No other United States Supreme Court decisions have directly addressed the issue.

---

1. This Court is aware of the difficult task trial courts must face to comply with *Witherspoon* and its progeny. The transcript in this and other death cases which this Court has reviewed reveals that trial courts have exercised the discretion afforded them in this delicate matter commendably. However, to avoid future difficulties in this area, the better practice would be not to excuse for cause veniremen who make equivocal responses to questions concerning the death penalty. The venireman may be excused by either party by way of a peremptory challenge, should either find the venireman's attitudes unsatisfactory.

2. See, 665 P.2d at 1191–1193 for comparison.

In *Davis v. Georgia,* 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976), the Supreme Court held that the exclusion of even one venireman in violation of *Witherspoon* was constitutionally prohibited. In that case, according to a footnote in Justice Rehnquist's dissent, the law of Georgia accorded the defense in capital cases 20 peremptory challenges, and the State one half as many as the defense; and the transcript of the trial revealed that the defense exercised 21 challenges, and the State 10. It was therefore questionable whether the State in *Davis v. Georgia* would have been entitled to another peremptory challenge. 97 S.Ct. at 400, footnote *.

Although this writer would be inclined to adopt the "harmless error/unused peremptory challenge" theory, it is obvious that the majority of the *Davis v. Georgia* Court implicitly rejected it by holding the way it did, instead of remanding the case for lower court hearings on the matter. We therefore join the ranks of other jurisdictions, who have considered and rejected the "harmless error/unused peremptory challenge" exception to *Witherspoon*.[3]

█ Secondly, although not raised upon this appeal, it should be noted that an 8 in. by 10 in. posed pre-death color photograph of one of the victims was introduced into evidence. This Court has previously condemned the use of such photographs when the existence of no relevant issues are made more or less probable by their introduction into evidence. *Boutwell v. State,* 659 P.2d 322 (Okl.Cr.1983); *Smith v. State,* 650 P.2d 904 (Okl.Cr.1982); *Ritchie v. State,* 632 P.2d 1244 (Okl.Cr.1981); *Hudman v. State,* 89 Okl.Cr. 160, 205 P.2d 1175 (1949).

In the present case, it was established through ample evidence that, prior to the killings, the appellant drove throughout the countryside in Arkansas and Oklahoma displaying a picture of one of the victims to residents and inquiring whether she had been seen. The photograph had no apparent probative value, and could only have served to unfairly prejudice the jury. It is to be excluded upon retrial.

█ Thirdly, we are convinced that the appellant's first confession was obtained in violation of his constitutional rights, and should therefore not have been introduced against him at trial. At approximately 10:45 a.m. on June 26, 1980, the appellant was interrogated by O.S.B.I. Agent Leo Albro at the Delaware County Sheriff's Office. Upon initiation of the interrogation, a discussion of whether the appellant wanted an attorney arose. The appellant stated that he knew an attorney in Siloam Springs, Arkansas. According to the appellant, Agent Albro then told him that if he were not guilty, he would not need an attorney.

Agent Albro admitted making that statement, but contended that it was made after the appellant decided to waive his right to counsel. However, a reading of the transcript in its entirety, including the threat that the appellant would get the death penalty if he did not confess, which statement Agent Albro also admitted making, satisfies us that his conduct was designed to dissuade the appellant from exercising his right to counsel. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Oregon v. Bradshaw,* —— U.S. ——, 103 S.Ct. 2830, 2840, 77 L.Ed.2d 405 (1983); *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

We note that the appellant related substantially the same confession to Agent Albro in December of 1980, as he was being returned to Oklahoma from Florida. Also, in September or October of 1980, the appellant told two cellmates in the Delaware County Jail virtually the identical story he had related to Agent Albro. We leave to the trial court the determination of the

---

**3.** *Hance v. Zant,* 696 F.2d 940 (11th Cir.1983); *Burns v. Estelle,* 592 F.2d 1297 (5th Cir.1979), adopted en banc 626 F.2d 396 (5th Cir.1982); *Barfield v. Harris,* 540 F.Supp. 451 (E.D.N.C. 1982); *Blankenship v. State,* 280 S.E.2d 623 (Ga.1981); *Grijalva v. State,* 614 S.W.2d 420 (Tex.Cr.App.1980); *Re Anderson,* 69 Cal.2d 613, 73 Cal.Rptr. 21, 447 P.2d 117 (1968), cert. denied 406 U.S. 971, 92 S.Ct. 2415, 32 L.Ed.2d 671 (1972).

admissibility of these confessions upon re-trial.

Next, the appellant has devoted several of his allegations of error to the instructions given the jury. We leave to the discretion of the trial court the instructions to be given in accordance with the evidence and argument of counsel presented upon retrial.

The appellant's ninth, tenth, eleventh and twelfth assignments of error concern the propriety of his death sentences. Due to the disposition of this case, we need not address those issues.

We also deem it unnecessary to discuss the appellant's fifth allegation of error, in which he complains of prosecutorial misconduct. We are confident the prosecutor will temper his zeal with fairness upon retrial of the case.

For the above and foregoing reasons, this case is REVERSED and REMANDED for a new trial.

CORNISH and BRETT, JJ., concur.