Ronnie J. DUNFORD, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–83–78.

Court of Criminal Appeals of Oklahoma.

July 5, 1985.

Asst. Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Susan Brimer Agosta, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Presiding Judge:

The appellant, Ronnie J. Dunford was convicted of Murder in the First Degree, Case No. CRF–81–136, and sentenced to life imprisonment from the District Court of Garfield County, Oklahoma, and appeals.

On the evening of April 15, 1981, Jerome Freeman was shot four times outside the Cobra Club in Enid, Oklahoma, and later died from the inflicted wounds.

At trial, Betty Ogunleye, the appellant's sister-in-law, testified that she had dropped off the appellant and his wife, Amelia, at the Cobra Club between 7:30 and 8:00 p.m. The appellant was pointing a gun at Freeman, who was seated outside the club in his car, as she drove away.

Seated in the car with Freeman was Joe Harvey Baker, who testified that the appellant came up to the car with a gun in his hand "hollering where is the so and so that hit him in the mouth." After appellant walked to the driver's side of the car and pointed his gun at Freeman, Freeman pulled out a gun and pointed it at appellant. Appellant backed away, and Freeman stepped out of the automobile, putting his gun in his pocket. While appellant kept his gun trained on Freeman, an argument ensued. Appellant threatened to kill both Freeman and Baker.

Baker stated that as Freeman and Barbara Foster began to walk around the building, Baker ran to find a gun with which to help Freeman. As he ran, he heard four gunshots. Baker returned to the scene and observed appellant exiting down an alley with his wife.

When called later as a defense witness, Baker testified that on the previous evening, he and Freeman had followed appellant around the neighborhood. Two verbal confrontations occurred, with Freeman pointing a gun at appellant and asking to "have it out."

Ladonna Dillon, Freeman's sister, saw appellant pointing a gun at her brother's head. She left to search for a gun, and upon her return, discovered the wounded Freeman lying partially beneath his car.

Walter Ward, who lives across the alley from the Cobra Club, saw the scene through his picture window. He observed appellant's approach, the ensuing argument, and Baker's exit. As Freeman was walking off, the victim suddenly turned and made a swing for appellant. Four shots were heard as Ward saw Freeman fall toward appellant and slide to the ground. He watched appellant and his wife exit on foot.

Enid police officers related escorting Freeman to the hospital and finding Freeman's gun at the scene. Sergeant Robert Reed testified to finding a gun under a pickup truck next door to the appellant's mother-in-law's house, where appellant was arrested on the night of the shooting. James Baldwin, a gunsmith, identified the gun as one he had returned to the appellant and his wife on April 14th, after repairing it.

O.S.B.I. agents testified that the bullets taken from the victim's body were undoubtedly fired from the pistol identified as the appellant's. Forensic experts explained the entry and effect of the bullets and testified that death occurred quickly.

The defense presented several witnesses. Carl Brantley, owner of the Cobra Club, had seen appellant playing pinball in the club earlier in the day. Brantley was inside the club when the shots were fired.

Joe Lorenz Johnson gave appellant a ride home on the night before the shooting. He stated that Freeman followed them around Enid, and twice confronted them with a gun asking to "have it out" with appellant.

Marie Butler, the appellant's mother-in-law, testified that appellant was at her home from 4:00 in the afternoon until he was arrested late in the evening. She saw uniformed policemen arrive in a squad car with the lights flashing. Butler recalled that appellant met them at the door and left with them without conversation.

Sergeant Gerald Davis was called by the State in rebuttal. He testified that no uniformed officers were present when the police arrested appellant. No squad car appeared at Butler's home that evening. He stated that, after answering a knock at the door, appellant told the officers his name was David Jones. Only after the officers called into the house for Amelia Dunford did the appellant admit he was Ronnie Dunford. The appellant did not take the stand at trial.

## I.

The appellant's first assignment of error involves the failure of the trial court to instruct the jury on self-defense. Defense counsel failed to request such an instruction at the trial. This generally precludes assertion of this issue on appeal. *Smith v. State*, 568 P.2d 639 (Okl.Cr.1977). The appellant asserts that the trial judge should have given the instruction "sua sponte" based on the evidence presented. While there is case law to that effect, this Court stated in *Crabtree v. State*, 339 P.2d 1066, 1072–3 (Okl.Cr.1958); *cert. den.* 359 U.S. 990, 79 S.Ct. 1119, 3 L.Ed.2d 979 (1959):

It is true that counsel cite and quote from many cases relative to the duty of the court to instruct the jury upon the issues presented by the evidence, and particularly upon the evidence of self-defense. *But the cases developing the rule contended for were cases where*

*there was no doubt as to the issue of self-defense* being involved. [citations omitted; emphasis added].

. . . . .

However, it is equally well settled that *where there is no evidence to show justification in self-defense it is not necessary for the court to give such an instruction.* [citations omitted; emphasis added].

■ Accordingly, a review of the evidence presented at trial clearly reveals that there is no basis for a self-defense claim. The evidence shows appellant approached the car where the victim was seated, pointed a gun at him, and later threatened to kill him. Regardless of what might have occurred the night before, the testimony of the witnesses indicates the appellant was the aggressor on the evening of the shooting. The appellant also relies on *Cordray v. State*, 268 P.2d 316 (Okl.Cr.1954). In that case, however, not only did defense counsel request an instruction on a self-defense theory, there was also evidence that the act was committed in self-defense. In the case at hand, there is not sufficient evidence to raise the self-defense claim. Based on the above, we find the appellant's first proposition meritless.

### II.

The second assignment of error raised by appellant is that the trial court committed error in failing to instruct the jury on the lesser included offense of Manslaughter in the First Degree. We disagree.

■ The defendant argues that, based on this Court's ruling in *Morgan v. State*, 536 P.2d 952 (Okl.Cr.1975), an instruction on Manslaughter in the First Degree was necessary. *Morgan* requires the trial judge to give an instruction on Manslaughter in the First Degree whenever the evidence warrants an instruction on self-defense. In the case at bar, no instruction on self-defense was needed, and therefore no instruction on Manslaughter in the First Degree was required.

■ The appellant also urges that an instruction on Manslaughter in the First Degree by Misdemeanor-Manslaughter was justified with Pointing a Gun, in violation of Title 21 O.S.1981, § 1279, as the underlying misdemeanor. Again, the defense counsel failed to offer a requested instruction, and we will not reverse unless it can be shown that the defendant was denied a fundamental right and prejudiced thereby. The fact that the defendant was convicted of Murder in the First Degree when there was a lesser offense instructed upon, that being Murder in the Second Degree, is supportive of the trial judge's discretion in not giving a misdemeanor manslaughter instruction. This Court has stated that:

Where there is any evidence tending to establish that a defendant was engaged in a misdemeanor at the time of the homicide, *and that he lacked a design to effect death,* the trial court must instruct on manslaughter in the first degree. [emphasis added].

*Dawson v. State*, 647 P.2d 447, 449 (Okl.Cr. 1982). However, as the state correctly asserts, there is no evidence at all of self-defense or any defense to show that he lacked the design to effect death; if anything, the clear intention of the defendant was to kill the victim as shown by the overwhelming evidence. The record of this case reveals that the appellant threatened to kill the victim moments before the shooting.

This Court has said in *Sanders v. State*, 556 P.2d 611 (Okl.Cr.1976), that it is within the trial court's discretion to give an instruction on a lesser offense. Having found no abuse of discretion and no basis for appellant's argument, we find this proposition meritless.

### III.

■ The appellant's third assignment of error concerns the use of Pointing a Gun in violation of 21 O.S.1981, § 1289.16 as the predicate felony in the instruction which was given on Murder in the Second Degree. We agree that pointing a gun cannot, under these facts, be considered an "indepen-

dent act not included within the resulting homicide" as required by *Tarter v. State*, 359 P.2d 596, 602 (Okl.Cr.1961). Yet, we find the instruction given could not have prejudiced the defendant since the jury returned a verdict of Murder in the First Degree. *Boyd v. State*, 572 P.2d 276 (Okl. Cr.1977). Further, there was no objection made to the instruction by trial counsel, and therefore, we find this argument to be without merit.

### IV.

 Next, the appellant contends the testimony of Sergeant Gerald Davis should not have been admitted at trial because the testimony was on issues collateral to the case and involved evidence of other crimes (Obstructing a Police Officer, in violation of 21 O.S.1981, § 540). The introduction of rebuttal testimony is a matter of discretion for the trial court, and this court will not interfere absent an abuse of that discretion. *Schneider v. State*, 538 P.2d 1088, 1095 (Okl.Cr.1975). After a review of the record, we are unable to locate any abuse of that discretion. Accordingly, this assignment of error is without merit.

### V.

In his supplemental brief, the appellant raises two additional allegations of error. He first reiterates his earlier argument relating to self-defense complaining the prosecutor's comments in closing argument precluded the jury from considering his defense. As stated above, the appellant, as the aggressor, had no grounds to raise a self-defense claim. Therefore, we find the comments of the prosecutor to be valid comments on the evidence presented at trial.

### VI.

The final error complained of is that the appellant received ineffective assistance of counsel at trial. Under the guidelines set forth in *Strickland v. Washington*, — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and also *Collis v. State*, 685 P.2d 975 (Okl.Cr.1984), it is clear that the defense counsel's assistance was reasonable considering all the circumstances. It is also apparent that trial counsel did not prejudice the appellant. There was overwhelming evidence of guilt in this case, and it has not been shown that any of the trial counsel's actions adversely affected the outcome of appellant's case. Therefore, we find no reasonable probability that defense counsel's actions prejudiced the defendant in any way, and find this proposition meritless.

Accordingly, for the foregoing reasons, the judgment and sentence is AFFIRMED.

BRETT and BUSSEY, JJ., concur.