**Russell Gene STILES, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–86–314.**

Court of Criminal Appeals of Oklahoma.

April 1, 1992.

Ron Wallace and Sid Conway, Asst. Public Defenders, Johnie O'Neal, Public Defender, Tulsa, for appellant.

William Lunn and Timothy Harris, Asst. Dist. Attys., Tulsa, Robert H. Henry, Atty. Gen., Tomilou Gentry Liddell, Steven Spears Kerr and David Walling, Asst. Attys. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Russell Gene Stiles, appellant, was convicted in Tulsa County District Court Case No. CRF–85–3251 of Murder in the First Degree and Robbery with a Firearm. As recommended by the jury, he was sentenced to death by lethal injection for the murder count and two hundred (200) years imprisonment for the robbery. From these Judgments and Sentences, appellant appeals.

The crimes of which appellant was convicted arose from a robbery on the evening of August 1, 1985, of Juanito's restaurant in Tulsa, Oklahoma. On that date, a man wearing a ski cap over his face entered through the restaurant's back door, grabbed employee Aron Rodriguez by the neck and announced that he was robbing the restaurant. The robber held a gun to Rodriguez's head and also pointed it at all of the employees. He then ordered the manager to give him the money from the cash register and the safe. The thief absconded with between $4,000.00 and $4,500.00, but not before Rodriguez used a metal pipe to beat the robber over the head. Rodriguez was shot by the thief and died. The thief left the bloodied ski cap and some of the money in the alley behind the restaurant.

Appellant was treated for head injuries in Siloam Springs, Arkansas, on the morning of August 2, 1985. He told several people, who later testified at trial, that he had robbed the restaurant and that he had to shoot an employee who kept hitting him.

During the sentencing stage of trial, the State presented evidence of the following crimes committed by appellant other than those for which he was on trial:

1. Possession of a dangerous weapon when appellant was stopped by police in Cypress, California, in 1980 (a loaded .38 caliber gun and a baseball bat cut in half with tape wrapped around it);

2. In 1980, he was stopped in Westminster, California, while in possession of a loaded .22 caliber automatic pistol, another loaded gun, a loaded sawed-off shotgun, wig, rubber mask, fake beard and two armored vests;

3. Jumping bail on several occasions;

4. Second degree robbery in 1981 in Missouri, stipulated to as having involved the threat of violence;

5. Letters from appellant to his sister, Lori Stiles, discussing contract murder of potential State witness; and,

6. Attempted robbery of a pharmacy in Tulsa on November 2, 1984, in which appellant carried and pointed a sawed-off shotgun. During cross-examination of appellant's expert witness, a psychiatrist, numerous prior offenses committed by appellant were disclosed. A juvenile record which included at least thirty-two burglaries and two cases of arson was mentioned.

The jury found the existence of two aggravating circumstances: that the defendant was previously convicted of a felony involving the use or threat of violence to the person; and, the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. *See* 21 O.S.1981, § 701.12(1) and (7), respectively. After weighing the aggravating circumstances against the mitigating evidence, the jury recommended the death penalty.

I.

■ The potential jurors were questioned during voir dire by the trial judge and then by the attorneys concerning each juror's ability to consider assessing the death penalty if appellant was found guilty of murder. The judge initially asked each venireperson "where the law and evidence warrants, in a proper case, could you without doing violence to your conscience agree to a verdict imposing the death penalty?" This is a proper inquiry in cases where the death penalty is requested. *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). However, counsel for the State asked a potential juror "if the evidence requires as a matter of law, [could you] consider then the death penalty for this Defendant, Russell Stiles?" On another occasion, a similar question was posed as "Are you capable of deciding as a matter of law, having looked at those instruc-

tions whether or not the death penalty can apply based on the facts?" An objection to the form of the last question was sustained and the jury was admonished to disregard it. In another instance, the prosecutor inquired of a juror, "And in the event, as a matter of law, that the State has met its burden that was set up in the instructions, are you able to render the death penalty in this case?"

■ Appellant charges that by these and similar inquiries the prosecutor repeatedly misstated the law and indicated that the death penalty was automatic. We disagree with this conclusion however unartfully the prosecutor styled the inquiries. When read in context with all of the prosecutor's remarks and in light of the trial court's explanation to the venire of procedures followed in death penalty cases, it is clear that the jurors were properly informed that if appellant was found guilty of murder they would then consider the appropriate punishment for the offense. The statutory scheme allowed for only life imprisonment or the death penalty upon a conviction of murder in the first degree. 21 O.S.1981, § 701.9(A).[1] Jurors in a capital case must be able to consider assessing the death penalty where the law so requires in order to be qualified as impartial jurors. "[T]he quest is for jurors who will conscientiously apply the law and find the facts." *Wainwright,* 469 U.S. at 423, 105 S.Ct. at 852. This assignment is without merit.

II.

■ Appellant contends that the trial court denied his right to confront a witness against him, Debra Sack, by limiting cross-examination of Ms. Sack. At trial, the court sustained the State's motion in limine preventing defense counsel from inquiring of Sack whether she had been upset with counsel because of the manner he had represented her husband in a criminal matter the year before. Her husband had been sent to prison, and defense counsel argued

---

1. This statute was amended in 1987 to include as possible punishment for murder in the first degree life imprisonment without parole. 21 O.S.Supp.1987, § 701.9(A).

that she had been upset and this proved that she was a biased witness.

Defense counsel did cross-examine Sack on this point at appellant's preliminary hearing and she was again questioned at an in camera hearing during trial. In each instance, she denied being upset and stated she had been satisfied when told by counsel that he was doing the best job he could. She had spent time with appellant during the days and weeks following the robbery/murder and testified only of statements he had made to her concerning the crimes and concerning his wounds.

While it is true that unduly limiting cross-examination can result in denial of the Sixth Amendment right to confront witnesses, *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), we do not believe this was the result in the present case. The Supreme Court held in *Van Arsdall* that the right to confront includes the right to expose the motive of the witness in testifying. However, the Sixth Amendment does not prevent the trial court from imposing limits on defense counsel's inquiry of a witness' potential bias.

> On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, 'The Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish.'

*Id.* at 679, 106 S.Ct. at 1435 (citation omitted) (emphasis in original).

The testimony which appellant's counsel wished to elicit was at best marginally relevant to this case. Being upset with defense counsel would not prove bias against appellant. Sack's testimony concerning appellant's acts and appearance was corroborated by many witnesses. The restriction imposed by the trial court on cross-examination was reasonable.

### III.

Appellant contends that he was convicted under an unconstitutional law because 21 O.S.Supp.1985, § 701.13(E)(2), denies a capital defendant the right to be sentenced by the same jury which determined his guilt. According to the statute, this Court must either affirm the sentence of death or set the sentence aside and remand the case for resentencing by the trial court. To remand for resentencing by the trial court, appellant argues, would violate his right under 22 O.S.1981, § 926, which provides that the jury which convicts "shall upon the request of the defendant assess and declare the punishment in their verdict within the limitations fixed by law, and the court shall render a judgment according to such verdict, except as hereinafter provided."

When conflicts arise between various statutes applying to the same situation, the more specific of the two governs. *Holder v. State*, 556 P.2d 1049, 1053 (Okl. Cr.1976). And when statutes are specifically designed by the Legislature to treat a given situation, that intent should be effectuated. *Luster v. State*, 746 P.2d 1159 (Okl.Cr.1987). Therefore, it follows that the Legislature intended the specific statutory procedure designed for capital cases found in Title 21 to take precedence over the general statutes of criminal procedure found in Title 22. *See also Livingston v. State*, 795 P.2d 1055 (Okl.Cr.1990).

Appellant further complains that the appellate procedure of remanding death cases for resentencing violates a specific portion of a statute governing the trial of capital cases. Title 21 O.S.1981, § 701.10,[2] provided that the sentencing proceeding shall be conducted by the trial judge before the trial jury as soon as practicable. Ap-

---

**2.** This statute was amended in 1987 and 1989 but continues to contain the same provision requiring the trial judge to conduct a sentencing proceeding before the same jury which convicted a defendant. 21 O.S.Supp.1989, § 701.10(A).

pellant argues that remanding for resentencing would deny him a substantial right and the statute is therefore unconstitutional.

The United States Supreme Court recently addressed the issue of whether a criminal defendant sentenced to death has a constitutional right to have a jury determine his sentence when error in his trial has been detected at the appellate stage. *Clemmons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). The Supreme Court held in *Clemmons* that neither a defendant's Sixth Amendment right to a jury trial nor the due process clause of the Fourteenth Amendment is infringed when an appellate court exercises it power under state law to correct errors without remanding the case to a jury to make new determinations. One of two aggravating circumstances found by the jury in *Clemmons* was subsequently invalidated. The correction made by the appellate court was reweighing aggravating and mitigating circumstances which a jury had originally weighed in a death penalty case. The Supreme Court held that such a procedure does not violate the Sixth Amendment right to a jury trial and that a defendant does not have an unqualified liberty interest under the due process clause of the Fourteenth Amendment to have a jury assess sentencing when error is found on appeal.

In 1989 the Oklahoma Legislature enacted 21 O.S.Supp.1989, § 701.10a, which explicitly provides the procedure to be followed when on appeal error is found in the sentencing stage of a death penalty case. It states that resentencing is to be by the trial court or a new jury in spite of the provision of Section 701.10 requiring sentencing by the same jury which convicted the defendant. Moreover, Section 701.10a states that it is a procedural statute and is to apply retroactively. Therefore, the conflict perceived by appellant is now nonexistent and we find that this assignment is without merit, particularly in light of the fact that we do not find reversible error in appellant's First Degree Murder conviction.

### IV.

■ Appellant cites a number of actions by the prosecutor which he claims collectively denied him a fair trial. We have reviewed the record and find that none of them constitute reversible error. Indeed, defense counsel zealously and intelligently represented his client and prevented error by objecting to hearsay testimony and the introduction of irrelevant evidence. We do, however, wish to address one of appellant's arguments. During the course of trial, the prosecutor unnecessarily exposed to the jury the blood saturated clothing of the victim. The cause of death in this case was not challenged and appellant had offered to stipulate as to cause of death. Furthermore, the odor of the clothing was offensive and noticeable to the judge. While we question the propriety of such conduct and cannot condone the same, we do not believe that such deprived appellant of a fair trial.

### V.

■ Appellant also cites arguments of the prosecutor in both stages of the trial which he claims denied him a fair trial. We have reviewed the record and are unpersuaded that appellant was prejudiced by improper arguments. His attorney conscientiously objected to argument that appeared improper and zealously protected appellant's rights. The prosecution and defense may argue the evidence and reasonable inferences to be drawn therefrom. *Hammer v. State*, 760 P.2d 200 (Okl.Cr. 1988); *Summers v. State*, 704 P.2d 91 (Okl. Cr.1985). We find no error.

### VI.

■ Appellant requested that certain instructions be given the jury during both stages of his trial. He now cites as error the refusal by the trial court to give particular ones. The first instruction noted is one that was recognized by this Court in *Knott v. State*, 432 P.2d 128 (Okl.Cr.1967). This instruction applies when the State has introduced a defendant's exculpatory statement in its case-in-chief and the defendant does not testify on his own behalf. *Brecheen v. State*, 732 P.2d 889 (Okl.Cr.1987).

The essence of the instruction is that in the circumstances described, the State is bound by the defendant's exculpatory statements unless otherwise disproved by the evidence.

We find that the trial court properly refused to give this instruction because appellant's admissions were not exculpatory. Exculpatory in this sense means a "statement which if true, would entitle [defendant] to an acquittal." *Dean v. State,* 381 P.2d 178, 181 (Okl.Cr.1963). One who kills while committing armed robbery is an aggressor and an aggressor is not entitled to claim self-defense. *Dunford v. State,* 702 P.2d 1051 (Okl.Cr.1985). "Where there is no evidence to show justification in self-defense it is not necessary for the court to give such an instruction." *Id.* at 1054. It was not error by the trial court to refuse this, as well as appellant's other instruction on self-defense, since there was insufficient evidence to justify either.

Appellant also requested the following instruction which the trial court rejected:

YOU ARE INSTRUCTED THAT if you find that the State failed to prove beyond a reasonable doubt that the Defendant was in the commission of a Robbery With A Dangerous Weapon at the time of the homicide; rather, that the Robbery With A Dangerous Weapon had been completed at the time of the homicide, you must return a verdict of not guilty or Manslaughter in the First Degree.

We find that the trial court did not err in declining this instruction. This instruction assumes that the robbery had been completed once he left the restaurant. The jury was properly instructed that to find appellant guilty of felony murder the homicide must have occurred while appellant was in the commission of the robbery, which was defined as follows:

A person is in the commission of Robbery with a Dangerous Weapon when he is performing an act which is an inseparable part of a Robbery with a Dangerous Weapon, or which is necessary in order to complete the course of conduct constituting a Robbery With a Danger-

ous Weapon, or when he is fleeing from the immediate scene of a Robbery With a Dangerous Weapon.

By appellant's admissions, he was leaving the restaurant when Rodriguez hit him. Blood, money and spent shell casings were found on the pavement behind the restaurant. The homicide occurred while appellant was fleeing the scene of the robbery; there was no evidence indicating otherwise. The robbery and homicide were part of one continuous transaction according to the evidence and this is the proper test by which to determine whether the two are causally connected. *Diaz v. State,* 728 P.2d 503 (Okl.Cr.1986). We find that the jury was properly instructed on this point.

Title 21 O.S.1981, § 711, defines the crime of First Degree Manslaughter. The offense may arise when a defendant commits homicide during the commission of a misdemeanor, during the heat of passion, or while resisting the decedent's attempt to commit a crime. *McDonald v. State,* 674 P.2d 51 (Okl.Cr.1984). The evidence at trial did not support manslaughter instructions on any of these fact situations, and it was not error for the court to refuse the previously requested instruction and appellant's requested instruction concerning First Degree Manslaughter.

Appellant urges that he was further prejudiced during the sentencing stage by the trial court's failure to give the instructions concerning exculpatory statements and self-defense. However, since these instructions were not warranted by the evidence in the first stage of trial, there is no further error due to their denial during the sentencing stage.

The United States Supreme Court held in *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), that an individual cannot receive a sentence of death for murder by an accomplice unless the individual knew the killing would take place, knew lethal force would be used, killed, or attempted the killing. Appellant contends that because of this holding, the trial court should have given two requested instructions. The instructions would have

advised the jury that the death penalty was not allowed unless they found appellant intended to kill or that he killed with malice aforethought.

The *Enmund* holding of course does not apply to appellant. He entered the restaurant with a lethal weapon and intentionally fired the gun at Rodriguez according to his admissions. No accomplices were involved. Further, malice aforethought is not an element of first degree felony murder. 21 O.S.Supp.1982, § 701.7(B). Therefore, an instruction on malice aforethought would have been improper. *See Wade v. State,* 581 P.2d 914 (Okl.Cr.1978).

## VII.

Title 21 O.S.1981, § 701.10, provides that "[o]nly such evidence in aggravation as the state has made known to the defendant prior to his trial shall be admissible." [3] The purpose of this notice requirement is to allow a defendant to prepare a defense to the evidence the State presents during the sentencing stage. *Jones v. State,* 660 P.2d 634, 639 (Okl.Cr.1983). On February 14, 1986, the State filed an amended bill of particulars which specified certain crimes appellant had either been convicted of or charged with that the State intended to introduce to prove that he would constitute a continuing threat to society.

At appellant's trial of April 7, 1986, defense counsel advised the court that he had never seen the amended bill of particulars. The prosecutor stated that he had personally hand delivered the document to defense counsel's office the same day he filed it. The prosecutor also stated that he had sent several letters to the public defender discussing information he had concerning these crimes and a change as to one of the witnesses testifying of the crimes. Defense counsel did not dispute the prosecutor but said that he had not seen the bill of particulars before trial and admitted that his office had been extremely busy in the months preceding trial. The trial court asked defense counsel if he

wished to interview the witnesses and advised him the court would sequester the jury for as long as counsel needed. It should also be noted that appellant's expert witness, a psychiatrist, discussed most of these crimes in a pretrial report to the court which was admitted into evidence.

The State appears to have done everything necessary to inform defense counsel of the evidence to be proven in the sentencing stage. Copies of the correspondence from the prosecutor to defense counsel were introduced, as well as a copy of the amended bill of particulars. In light of this, the actual knowledge by defense counsel of appellant's record, and the court's offer to allow counsel time to interview the witnesses, we do not believe appellant was denied due process at trial. In the absence of demonstrated prejudice, *see Newsted v. State,* 720 P.2d 734 (Okl.Cr.1986), *cert. denied* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986), this assignment is denied.

## VIII.

During the sentencing stage of his trial, appellant introduced the testimony of a psychiatrist, Dr. Goodman, who purported to diagnose appellant's mental problems after having gathered appellant's background since birth and having interviewed appellant five times and his mother once. In essence, he found appellant to have an antisocial personality disorder, but did not believe he was disposed to violence. He felt appellant would do well in an institutional setting and would not be a continuing threat to society.

On cross-examination, the prosecutor inquired of Dr. Goodman whether he was aware of certain crimes committed and confessed by appellant as a juvenile and since. Appellant complains for the first time on appeal that the prosecutor improperly cross-examined the doctor about these crimes because he did not notify the defense he would seek to introduce them.

We noted in the prior proposition that the purpose of the notice requirement is to allow the defense opportunity to prepare.

3. This statute was amended in 1987 and 1989,     but this provision was left intact each time.

In this case, however, it was the defense who forayed into appellant's criminal record and introduced the opinion that he did not present a threat to society. The doctor's written report to this effect was even admitted into evidence. Appellant can hardly claim surprise or denial of due process when the prosecutor tested the adequacy of the doctor's information. This is a proper function of cross-examination. *Fite v. State*, 526 P.2d 956 (Okl.Cr.1974). There is no error.

IX.

Evidence was introduced during the sentencing stage of trial of an attempted armed robbery allegedly committed by appellant in November, 1984, in Tulsa County. A witness had seen a man running away from some businesses and removing a ski cap from his head on a warm day. The man was approximately forty feet from the witness as he paced up and down a sidewalk and also called out a name. Another man drove by and the man with the ski cap got into the car. The car was turned around in front of the witness before leaving the area.

The witness, Dan Massaro, testified that when he was first shown six to eight photographs soon after the incident he was able to narrow his identification to two photographs. He said the police officer indicated to him that one of the two men he had identified was the man police suspected of committing the crime. Massaro was shown another photographic lineup about five months later. Mr. Massaro thought he identified appellant more easily this time because color photographs were used in the second lineup. He could not recall whether the photographs included the other man he initially identified as a possible suspect. He also stated that he had seen appellant's photograph in the newspaper; it could have been in connection with either the charges on trial or the previous attempted robbery. Appellant argued at trial and now on appeal that the photographic lineup was un-

necessarily suggestive and that Massaro's in-court identification should have been suppressed.

The test used to determine the reliability of an eyewitness' in-court identification is to include all of the surrounding circumstances and consideration must be given to: 1) prior opportunity of the witness to observe the defendant during the alleged criminal act; 2) degree of attention of the witness; 3) accuracy of the witness' prior identification; 4) the witness' level of certainty; and, 5) the time between the crime and the confrontation. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Porter v. State*, 674 P.2d 558 (Okl.Cr.1984). The danger to be prevented is irreparably mistaken identification. *Goudeau v. State*, 637 P.2d 859 (Okl.Cr.1981). Massaro observed appellant at a distance of forty feet for several minutes as it was getting dark outside. He noted that the individual stood under a street light waiting for his ride. The vehicle which he entered was turned around right in front of him. Massaro was intently watching appellant because of his running, removing a ski cap on a warm day, and later pacing, and because he suspected a robbery had just taken place. The description he had given to the police was not mentioned at trial, but he identified appellant's photograph along with another individual's within a few weeks of the attempted robbery. He later identified him exclusively in the subsequent photographic lineup five months later. Massaro then positively identified appellant at trial.

While we find highly improper the officer's conduct indicating that one of the two photographs Massaro initially identified was in fact a suspect,[4] it does not appear that its corrupting effect outweighed the indicia of reliability. Five months later, Massaro was able to again identify appellant from a color photograph. He did not notice whether the other man's photograph was included in the second array. This indicates that with better repro-

---

4. This writer's special concurrence in *Woods v. State*, 713 P.2d 1046, 1048 (Okl.Cr.1986) (Parks, J., special concurring), discussed the improprie- ty of such conduct by law enforcement officials. I do not withdraw from these views and address this issue again with much consternation.

duction he was able to easily identify appellant. He no longer confused appellant with any of the other suspects.

Attempted armed robbery was one of a number of crimes introduced at sentencing stage to prove appellant was a continuing threat to society. Massaro's testimony identifying appellant was tested both at an in camera hearing and on cross-examination. We cannot say it resulted in irreparably mistaken identification, and if considered unnecessarily suggestive, its effect was not outcome determinative.

### X.

■■■ Appellant next complains that his right to confront the witnesses against him was infringed when the trial court prevented defense counsel from cross-examining two witnesses about outstanding charges they might have. He claims that had he been allowed to inquire, bias would have been demonstrated. The two witnesses included a bail bondsman who testified only that he posted bond for appellant on the attempted armed robbery charge on July 14, 1985, and a handwriting expert who compared appellant's handwriting with letters found in Lori Stiles possession. According to appellant, one witness had pending charges for second degree rape and lewd molestation, and the other had drug charges.

We find the limits placed on defense counsel were reasonable and proper. We noted earlier that a trial court may place reasonable limits on cross-examination when there is the danger of harassment, confusion, or similar problems. The Sixth Amendment right to confront witnesses is not violated by fair restraints. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). In the instant case, the bondsman testified only to posting bond for appellant. Cross-examination on his own pending criminal charges would have had no probative value concerning the veracity of his testimony. His testimony was limited to one objective fact. The testimony of the handwriting expert also presented objective evidence. He compared appellant's known handwriting sample with handwriting from letters seized from Lori Stiles which were signed "Russell," and contained appellant's return address. By graphic display before the jury, comparisons were made of the characteristics of each handwriting sample. Appellant brought out on cross-examination that the witness was no longer on the police force and only did examination for civil cases. Because of the objective nature of the testimony of each of these witnesses, evidence of outstanding criminal charges against them was. irrelevant.

### XI.

■■■ Appellant contends that the trial court erred in requiring the jury to deliberate following the sentencing stage at a late hour of the day. The jury began deliberations at approximately 10:30 p.m., and completed them at 2:30 a.m. the following morning. There is no indication in the record that any of the jurors had a problem with this arrangement, but defense counsel requested the jury be kept overnight and allowed to begin deliberations the next day. The prosecutor stated he did not want to wait.

Title 22 O.S.1981, § 857, has been held to require the jury to stay together once a case is submitted to them. *Hayes v. State*, 397 P.2d 524 (Okl.Cr.1964). The judge advised the jury that he had them continue with their deliberations because he had to keep them together. We do not believe the trial judge abused his discretion in doing so, *see Nauni v. State*, 670 P.2d 126 (Okl. Cr.1983), and do not find error.

### XII.

■■■ The jury was instructed during the first stage of trial that:

You should not let sympathy, sentiment, or prejudice enter into your deliberations, but should discharge your duties as jurors impartially, conscientiously, and faithfully under your oaths and return such verdics as the evidence warrant when measured by these instructions.

Later, during the sentencing stage, the jury was instructed:

> All the previous instructions given you in the first part of this trial apply where appropriate and must be considered together with these additional instructions. Together they contain all the law of any kind and the rules you must follow in deciding this case. You must consider them all together and not just a part of them.

Appellant now alleges that the effect of these instructions was to foreclose the jury from full consideration of the evidence offered in mitigation. The argument is that since the jury was told to disregard sympathy, they would necessarily disregard factors in evidence which would indicate a life sentence was appropriate. When originally raised, appellant's argument was supported by the Tenth Circuit Court of Appeal's decision in *Parks v. Brown*, 860 F.2d 1545 (10th Cir.1988). However, that position was reversed in *Davis v. Maynard*, 911 F.2d 415 (10th Cir.1990), upon reconsideration in light of the United States Supreme Court's opinion in *Saffle v. Parks*, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990).

The Supreme Court held in *Saffle v. Parks* when instructions were given like those given in this case and when the same argument was made as in this case,[5] that there was no constitutional error. The Court held that the rule urged by the petitioner—that the "anti-sympathy" instructions violated the Eighth Amendment—was not dictated by prior case law. The Court distinguished rules that govern which factors the jury must be permitted to consider from rules that govern how the state may guide the jury in considering and weighing those factors in deciding the sen-

tence. Therefore, the Court reasoned, their prior decisions in *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), which held that the state cannot bar relevant mitigating evidence from being presented or considered, do not inform or govern the issue presented.[6] They further reasoned that capital sentencing must be reliable, accurate, and not arbitrary, so advising the jury to not base its decisions on sympathy helps to ensure that their decision is based on the actual evidence instead. We find no error resulted from these instructions.

## XIII.

As his next assignment of error, appellant urges that his conviction for both robbery and felony murder when the robbery served as the predicate felony violates his right to not twice be put in jeopardy for the same offense. We agree. We have previously addressed this issue and hold as we have done in similar instances.[7] Because the robbery "merged" with the offense of felony murder, the conviction for First Degree Robbery must be REVERSED and REMANDED with instructions to DISMISS.

## XIV.

Appellant next urges that his death sentence should be modified to life imprisonment because his sentence is excessive in light of the fact that he killed Rodriguez only after the victim injured him as he attempted to escape. Again, appellant argues that instructions on self-defense should have been given and that he should not have been given the death sentence unless the evidence proved that he

---

**5.** *Parks v. Brown* was also an Oklahoma death case on habeas corpus petition in federal court. The same instructions were given in that case as were given in this case.

**6.** This writer has previously expressed concern that a jury could very easily be confused by instructions which at once advise the jury to not be affected by sympathy and to weigh mitigating factors. *Fox v. State*, 779 P.2d 562, 579 (Okl.Cr.1989) (Parks, P.J., special concurring).

Most mitigating factors appeal to jurors' sympathy and compassion. I am thoroughly convinced that juries need clearer instructions on this matter. At this time, however, I yield my views to the majority on the basis of *stare decisis*.

**7.** *See Castro v. State*, 745 P.2d 394 (Okl.Cr.1987), *on reh'g.*, 749 P.2d 1146, *cert. denied* 485 U.S. 971, 108 S.Ct. 1248, 99 L.Ed.2d 446 (1988).

killed intentionally. We have previously addressed the first of these issues. We note further that had appellant been charged with premeditated murder, the jury may have found sufficient evidence to convict of that form of homicide. By his very admissions, which is the same evidence he bases his present claims on, he intentionally shot Rodriguez. Title 21 O.S.Supp.1989, § 701.7(A), defines malice aforethought as the "deliberate intention unlawfully to take away the life of a human being, which is manifested by external circumstances." Furthermore, "[a] design to effect death sufficient to constitute murder may be formed instantly before committing the act by which it is carried into execution." 21 O.S.1981, § 703.

◼ One who creates a desperate situation inherently dangerous to human life cannot subsequently disavow responsibility for harm which flows from it. *Hatch v. State,* 662 P.2d 1377 (Okl.Cr.1983), *cert. denied* 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986). A jury need not find an intended killing to convict of felony murder and to render a sentence of death.

Statutes providing the death penalty for felony murder based on less than premeditation or express malice aforethought have been upheld against constitutional challenge. *See, e.g., Collier v. State,* 244 Ga. 553, 261 S.E.2d 364 (1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1346, 63 L.Ed.2d 781 (1980); and, *Collins v. State,* 261 Ark. 195, 548 S.W.2d 106 (1977), *cert. denied,* 434 U.S. 878, 98 S.Ct. 231, 54 L.Ed.2d 158. While one who does not himself kill, attempt to kill or intend that a killing take place or that lethal force be employed in the commission of a felony may not suffer the extreme sanction, *see, Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), the evidence amply supports the conclusion in the case at bar that the appellant alone caused the death of the victim by suffocation after brutally raping her.

*Johnson v. State,* 731 P.2d 993, 1002 (Okl. Cr.1987). In the present case, appellant knowingly and with lethal force committed a felony inherently dangerous to human life. His use of deadly force was without justification. This assignment lacks merit.

## XV.

◼ One of two aggravating circumstances found by the jury during sentencing was "the existence of the probability that defendant would commit criminal acts of violence that would constitute a continuing threat to society." 21 O.S.1981, § 701.-12(7). Appellant contends that this aggravating circumstance is unconstitutionally vague and that no definitive guidance has been given of what must be proven to establish the same. A majority of this Court, however, has previously upheld this aggravating circumstance against similar attacks. *Boltz v. State,* 806 P.2d 1117 (Okl.Cr.1991); *Liles v. State,* 702 P.2d 1025 (Okl.Cr.1985), *cert. denied* 478 U.S. 1028, 106 S.Ct. 3341, 92 L.Ed.2d 749 (1986); *Johnson v. State,* 665 P.2d 815 (Okl.Cr. 1982) (remanded on other grounds).[8]

The circumstance at issue is one whereby a jury predicts the likelihood that a particular defendant will commit criminal acts of violence in the future. Of course, criminal acts are those proscribed by law, and violence is a commonly understood word. Appellant has an extensive history of robberies and burglaries and of offenses for possession of lethal weapons. In *Liles,* we found similar evidence supported this aggravating circumstance. While burglaries and robberies do not always connote violence, the evidence indicates that appellant committed crimes with the presence of lethal weapons or with threat of violence. While awaiting trial, he also suggested the contract killing of two witnesses in a letter confiscated from his sister. The jury's finding of this aggravating circumstance was supported by evidence according to previous decisions of this Court.

**8.** In my specially concurring opinion in *Boltz,* I expressed my personal reservations concerning this aggravating circumstance. *Id.* 806 P.2d at 1126. I yield, however, to the majority view of upholding it on the basis of *stare decisis.*

■ Appellant further asserts that fundamental error resulted from the trial court's failure to define for the jury the elements of this aggravating circumstance. Appellant did not request such an instruction and has thus failed to preserve this assignment for review. *Liles,* supra.

### XVI.

■ As his next assignment of error, appellant alleges that the trial court erred in failing to inform the jury *sua sponte* that unanimous agreement upon the mitigating circumstances was not required before the jury could consider them. On this basis, he contends that his sentence of death was imposed in violation of *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), and *McKoy v. North Carolina,* 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990). We disagree.

In both *Mills* and *McKoy,* the Supreme Court addressed the issue of capital sentencing instructions which *required* unanimity among jurors before they were permitted to consider a particular mitigating circumstance. The jury in *Mills* was instructed that it must unanimously agree upon the existence of any of the mitigating circumstances presented. In reversing the petitioner's death sentence, the Supreme Court held that the instructions and verdict form created "a substantial probability that reasonable jurors ... well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance." *Mills,* 486 U.S. at 367, 108 S.Ct. at 1860. In *McKoy,* the Court reversed the sentence of death because "the instructions and verdict form expressly limited the jury's consideration of mitigating circumstances unanimously found." *McKoy,* 110 S.Ct. at 1234 n. 8. Both decisions reiterated the principle that a jury may not be precluded from considering any relevant mitigating evidence proffered by a defendant. *Mills,* 486 U.S. at 374, 108 S.Ct. at 1865; *McKoy,* 110 S.Ct. at 1233, 108 L.Ed.2d at 380. *See also Skipper v. South Carolina,* 476 U.S. 1, 4, 106 S.Ct. 1669, 1670-71, 90 L.Ed.2d 1 (1986);

*Eddings v. Oklahoma,* 455 U.S. 104, 110, 102 S.Ct. 869, 874, 71 L.Ed.2d 1 (1982); and *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d 973 (1978). "[A]llowing a 'holdout' juror to prevent the other jurors from considering mitigating evidence" violates this principle. *McKoy,* 110 S.Ct. at 1231, 108 L.Ed.2d at 377.

We find the instant case readily distinguishable from the above cited decisions. In both *Mills* and *McKoy,* the Supreme Court held that a unanimity *requirement* concerning mitigating circumstances resulted in a constitutionally infirm death sentence. However, neither decision mandates that a trial court instruct a capital sentencing jury that unanimity *is not required* before each juror can consider a particular mitigating circumstance. Because the instructions and verdict forms in the present case did not require unanimity regarding mitigating circumstances, nor could they reasonably have been interpreted to require such, we hold that the jury was not precluded from considering any of the mitigating evidence proffered by appellant. Accordingly, this assignment of error lacks merit.

### XVII.

Pursuant to 21 O.S.Supp.1985, § 701.-13(C), this Court is called upon to determine two issues in all capital cases:

1. Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and,

2. Whether the evidence supports the jury's finding of a statutory aggravating circumstance as enumerated in Section 701.12 of this title.

First, from our review of the record, we cannot say that the jury was influenced by passion, prejudice, or any other arbitrary factor contrary to Section 701.13(C)(1).

Second, the jury found that appellant was previously convicted of a felony involving the use or threat of violence to the person and the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. 21 O.S.1981,

§ 701.12(1) and (7), respectively. Both aggravating circumstances are adequately supported by the evidence.

Because of the foregoing, we hold that appellant's Judgment and Sentence for First Degree Robbery be REVERSED and REMANDED to the district court with instructions to DISMISS. His Judgment and Sentence for Murder in the First Degree is AFFIRMED.

LANE, P.J., LUMPKIN, V.P.J., and BRETT and JOHNSON, JJ., concur.