**Carlos Bethel CARTER, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–83–370.**

Court of Criminal Appeals of Oklahoma.

March 15, 1985.

 * * * * * *

John B. Monnet, Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Carlos Bethel Carter, hereinafter referred to as the defendant, was convicted of Murder in the First Degree, in Oklahoma County District Court, Case No. CRF–82–3199, was sentenced to life imprisonment, and he appeals.

Testimony at trial established that on June 27, 1982, the seventeen-year-old victim, Melissa McCauley, after an argument with the defendant's youngest son, Charles Carter, telephoned her stepmother, Mary Lou McCauley, and asked that she be picked up at the defendant's house where she had been living. Upon her arrival at the Carter residence, Mrs. McCauley was informed by the defendant that Melissa had gone "with Charles somewhere." Mrs. McCauley then left the Carter residence and located her husband, Robert McCauley. The pair continued to search for Melissa, eventually locating her, with the assistance of Charles' brother Wes, at an apartment in South Oklahoma City where another brother, Steve Carter, lived.

A loud confrontation occurred between the Carter brothers, mainly Charles, and the elder McCauleys' which seemed to settle the situation. However, as Mr. and Mrs. McCauley turned to leave, Mr. McCauley, who had a .22 revolver strapped to his left hip and a four shot derringer in his back waistline, was met at the top stairs of the 2-story apartment house by the defendant, who had armed himself with a .38 revolver.

According to Mary Lou McCauley, the defendant shouted at her husband, "Hey, fella, why don't you take your slut of a wife, your whore of a daughter and take them home where they belong." She further related that when somebody hollered, "Watch out, he's got a gun," her husband reached for his gun, she heard gunfire and she, Robert and Melissa all fell to the floor. Mrs. McCauley denied that she was carrying a gun at the time of the shootings.

Charles Carter testified that he and his brothers had been threatened by Robert McCauley who had told them that, "... if something don't start straightening up around here, somebody is going to get hauled off in a meat wagon, and it ain't going to be me." Further, he stated that three shots were fired, that Melissa was the last person shot and that there was a pause between the second and third shots.

Additional witnesses testified essentially that Robert McCauley reached for his weapon first, that Mary Lou McCauley was shot in the face and that Melissa McCauley was shot last.

At trial it was stipulated that the shooting death of Robert McCauley was justifiable homicide and that no charges had been filed against the defendant for shooting Mary Lou McCauley. Medical evidence which was introduced established that Robert died from a gunshot wound to the temple inflicted from 6 to 18 inches distance. Mary Lou was wounded in the face (cheek) and Melissa died from a gunshot to the back of the head. Further, Melissa was unarmed during the incident and no gun

belonging to Mary Lou was found at the scene.

The defendant testified that he saw a gun in Mary Lou's purse when she was at his home earlier in the day and he had also observed that Mr. McCauley was armed. Fearing that McCauley was going to kill one of his sons, the defendant stated he got his gun and went to the apartment where he saw McCauley shoving his (defendant's) son Charles "brutally." He related that he informed McCauley that it appeared that Melissa and Charles were unable to live together and that it would be better if Melissa moved out; McCauley responded by telling the defendant to "go to hell" and reached for his gun. Carter maintained that he thought he was surrounded and shot Mr. McCauley first and then he "blowed her [Mary Lou's] damn head off" when she reached into her purse. Further, when Melissa ran to the other side of the room, he heard something drop that sounded like a gun and he shot her. He concluded by stating that very few people could outshoot him.

### I.

In his first assignment of error, the defendant contends that the evidence was insufficient to establish the element of premeditation or malice aforethought and therefore his First Degree Murder conviction cannot stand. This Court has consistently held that it is the exclusive province of the jury to weigh the testimony and circumstances to determine malice aforethought. *McFarland v. State*, 648 P.2d 1248 (Okl.Cr.1982); *Nichols v. State*, 564 P.2d 667 (Okl.Cr.1977).

A review of the record discloses that sufficient evidence was presented on the element of premeditation/malice for the jury to resolve the issue, particularly Charles' testimony that the defendant hesitated before firing the third shot. Further, the evidence established that he went to Steve's apartment armed with a pistol. There was ample time for the defendant to have sufficiently premeditated the killing, as we have held that sufficient premedita-

tion to murder can be formed in a mere instant. *Miller v. State*, 523 P.2d 1118 (Okl.Cr.1974).

Here the trial court properly instructed the jury on malice aforethought, deliberate intent, heat of passion, adequate provocation, self defense and First Degree Manslaughter. We are of the opinion that the jury weighed all the evidence and this Court will not invade the province of the jury and overturn its verdict. *McFarland*, supra at 1250. See also, *Morris v. State*, 607 P.2d 1187 (Okl.Cr.1980). The defendant's first assignment of error is without merit.

### II.

Next, the defendant alleges that the trial court improperly admitted evidence of other crimes, the shootings of Robert and Mary Lou McCauley, during the trial, in violation of *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979). The defendant correctly cites the general rule that one is to be convicted, if at all, by evidence which shows one guilty of the offense charged, and evidence that one is guilty of other offenses must be excluded. *Taylor v. State*, 640 P.2d 554 (Okl.Cr.1982); *Atnip v. State*, 564 P.2d 660 (Okl.Cr.1977). This Court has also recognized that evidence is admissible that tends to prove the defendant guilty of the offenses charged even though it may tend to prove a different offense, when both offenses are so closely related or connected as to form a part of the entire transaction. *Dean v. State*, 671 P.2d 60 (Okl.Cr.1983); see also, *Bruner v. State*, 612 P.2d 1375 (Okl.Cr.1980).

We are of the opinion that the complained of evidence was a clear example of the "res gestae" exception to *Burks* and as such, was clearly admissible because it tended to give the jury a complete understanding of the shooting of Melissa. To have deleted the evidence complained of would have resulted in unexplicable gaps in the testimony of several witnesses who each gave their account of what happened on the crowded stairs. Moreover, it would

have caused jurors to rely on pure conjecture as to what happened to Robert and Mary Lou after heated words had been exchanged and Robert had just reached for his gun. Under the circumstances of this case, the evidence of the other crimes was properly admissible and we find no merit to this assignment of error.

### III.

 In his final assignment of error, the defendant argues that the trial court erred by admitting, over objection, allegedly prejudicial photographs. Carter complains of State's Exhibit Nos. 3 and 7, the former, a color photograph of Robert McCauley lying dead in the corner at the crime scene, the latter, a color photograph of the entry wound to his temple.

The defendant failed to include this assignment of error in his motion for new trial and in his petition in error and thus he has not properly preserved the alleged error for appellate review. *Coleman v. State*, 668 P.2d 1126 at 1132 (Okl.Cr.1983), and cases cited therein.

For the foregoing reasons, the judgment and sentence appealed from is hereby AFFIRMED.

BRETT, J., concurs.

PARKS, J., concurs in result.