Dudley Allen POWELL, Appellant,

v.

**STATE of Oklahoma, Appellee.**

**No. F–91–431.**

Court of Criminal Appeals of Oklahoma.

July 14, 1995.

Order Granting Rehearing Sept. 15, 1995.

John A. Blake, Pauls Valley, for Appellant at trial.

Jamie D. Pybas, Oklahoma Indigent Defense System, Capital Division, Norman, for Appellant on appeal.

Charles Douglas, Pauls Valley, for State at trial.

Susan Brimer Loving, Attorney General, A. Diane Blalock, Assistant Attorney General, Oklahoma City, for Appellee on appeal.

## OPINION

STRUBHAR, Judge:

Dudley Allen Powell, Appellant, was tried by jury in the District Court of Garvin County, Case No. CRF–90–191, before the Honorable J. Kenneth Love, District Judge.[1] Powell was convicted of Murder in the first degree (21 O.S.Supp.1989, § 701.7). The jury found two (2) aggravating circumstances[2] and recommended death. The trial court sentenced Powell accordingly. From this Judgment and Sentence, he appeals. We affirm.

## FACTS

On the evening of September 21, 1990 Jimmy Dewayne Thompson, Vickie Hensley and Brian Spears met to go "ride around" Pauls Valley. They were soon joined by Powell, Clairborne Johnson, III and Mickey Daniels. The group cruised through Pauls Valley, stopping at several places to buy alcohol and beer. Later in the evening the group decided to go to the Klondike Cemetery, a known hangout for drinking.

Hensley and Johnson[3] testified that on the way out to the cemetery Powell and Spears discussed beating Thompson and taking his truck. Powell had told Hensley and Daniels earlier in the evening that he "want[ed] to just kick [Thompson's] butt." At the cattle guard that blocked the entrance to the cemetery, Powell told Johnson and Daniels that

when he was half way down the road leading into the cemetery, he was going to "jump" Thompson. Powell told Daniels, Spears and Johnson to join in the beating.

As they walked down the road, Hensley heard Powell say, "who is going to hit him first?" When she looked up Thompson was on the ground. Powell struck Thompson in the head with his fist. Johnson joined in and kicked Thompson while Powell jumped up and down on Thompson's body. Spears joined in and beat and kicked Thompson with the others. Hensley and Daniels retreated to the truck. Johnson testified he, Powell and Spears hit, kicked and jumped on Thompson. Johnson said they did not intend to kill Thompson at first, but at some point decided to kill him. After the beating Spears grabbed Johnson and Powell by the arms, produced a knife and said, "we [have] to kill him." They went back to Thompson's body and each stabbed him several times. Johnson testified they killed Thompson because he could testify against them.

Hensley and Daniels said Powell returned to the truck momentarily and told them Johnson had stabbed Thompson in the throat and that Johnson would take Thompson's truck to Tulsa and sell it. When Powell, Spears and Johnson returned to the truck they had blood on their shoes and hands. Spears told the group to "shut up and listen to what [Johnson had] to say." Spears wanted Johnson to take Thompson's truck to Tulsa and sell it. Spears told Hensley, "you just got to remember what I told you. If anyone asks you anything to just tell them what I said." Spears told Hensley to say that Thompson took them to the football game and that he [Spears], Hensley and Daniels went to Oklahoma City after the game. Spears emphasized, "you better tell [the police the story] because if you don't, we'll all get in trouble for all this." Daniels asked Powell, Spears and Johnson if they killed

1. Powell was tried jointly with Brian Spears who perfected his appeal separately under Court of Criminal Appeals Case No. F–91–376.

2. [1] the murder was especially heinous, atrocious, or cruel; and [2] the murder was committed for the purpose of avoiding or preventing a

lawful arrest or prosecution. *See* 21 O.S.1981, §§ 701.12(4) and (5).

3. Johnson entered a plea of guilty to First Degree Murder receiving a sentence of life without parole. As part of his plea he agreed to testify against Powell and Spears.

Thompson, but no one responded. He said Powell and Johnson continued to talk about selling the truck in Tulsa. Daniels said Powell told him later in jail that Johnson had a knife and they had stabbed Thompson.

The morning after the murder Spears told Daniels, "man, you don't want to know [what we did to Thompson]. The least you know, the better off you are." Spears told Daniels and Hensley they needed an alibi. Spears reiterated they must tell police they went to the football game and afterwards to Oklahoma City.

In a statement to police Powell said he rode around Pauls Valley drinking and ended up at Klondike Cemetery. There, he decided he would "kick [Thompson's] ass." Powell said he struck Thompson and stomped him along with the others. After the beating, he said they decided to steal Thompson's truck and to kill him. They went back to the body and Johnson produced a knife and stabbed Thompson. Powell told Officer Wigley he attacked Thompson because "he was stupid." Neither Powell nor Spears testified or put on evidence in first stage.

## ISSUES RELATING TO JURY SELECTION

■ In his ninth proposition of error, Powell argues he was denied a fair trial when the trial court refused to excuse prospective juror Bryant for cause. Powell argues the trial court abused its discretion because it based its decision "not on what the totality of the examination suggested, but on the final round of questioning in which the State finally pressured Bryant into claiming that he could give both sides a fair trial." [4]

■ The decision whether to disqualify a prospective juror for cause rests in the trial court's sound discretion. *Allen v. State*, 862 P.2d 487, 491 (Okl.Cr.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1657, 128 L.Ed.2d 375 (1994); *Workman v. State*, 824 P.2d 378, 380 (Okl.Cr.1991), *cert. denied*, 506 U.S. 890, 113 S.Ct. 258, 121 L.Ed.2d 189 (1992). The trial court's decision will not be overturned unless an abuse of discretion is shown. *Allen*, 862 P.2d at 491; *Simpson v. State*, 827 P.2d 171,

175 (Okl.Cr.1992). We note all doubts regarding jury impartiality in a criminal case must be resolved in favor of the accused. *Simpson*, 827 P.2d at 175. This is so because a juror who cannot impartially decide guilt violates his oath and is the proper subject of a challenge for cause. *Id.*; *Dutton v. State*, 674 P.2d 1134, 1138 (Okl.Cr.1984).

During voir dire prospective juror Bryant stated that he had read all that he could about the case because he worked and went to college with Johnson's father. Bryant also followed Johnson's high school basketball career. When asked if he could be impartial, Bryant replied, "I would do my best." After the prosecutor advised Johnson would be a witness for the prosecution and relay the events of the murder, he asked Bryant if he could be impartial. Bryant again replied, "I would do my best." Bryant said he would "try" to set aside what he had read and listen to the evidence submitted in court. The prosecutor then asked if Bryant would follow the law and the court's instructions. Bryant replied that he would.

When questioned by Spears' counsel, Bryant advised that he had not seen Johnson's father in several years and that he had not formed an opinion as to the guilt or innocence of Powell or Spears. When Spears' counsel asked if he would tend to give more credibility to the testimony of Johnson, Bryant replied, "I would do my best to keep an open mind." Both Powell's and Spears' attorneys challenged Bryant for cause. Before ruling, the trial court allowed the prosecutor to rehabilitate Bryant. After receiving two equivocal answers, the prosecutor asked Bryant for a commitment to set aside his prior dealings with Johnson's father and the accounts he had read in the newspaper and consider only the evidence introduced at trial. Bryant stated he would do so. The trial court overruled the motion to excuse Bryant for cause.

Powell's counsel renewed the questioning about Bryant's impartiality and his commitment to start from "ground zero." Bryant replied, "[w]ell, the first two times I an-

---

4. *See* Appellant's Brief at 72.

swered that, I said I would try. And the last time I said, yes. And it goes back to where I would do my darnest (sic) to do it. You know somebody for 20 years, you know, it is hard to block everything out of your mind. But I would do my best...." Bryant conceded it would be hard "to block everything out of [his] mind." Both Powell's and Spears' lawyers renewed their challenges for cause. The trial court again allowed the prosecutor to rehabilitate Bryant. Bryant unequivocally stated he would follow his oath and put aside all outside influences. The trial court overruled the renewed motions to remove Bryant for cause.

■ It is the trial court's duty to determine a prospective juror's actual bias, and it has broad discretion in ruling on challenges. *Simpson*, 827 P.2d at 175; *Dennis v. United States*, 339 U.S. 162, 168, 70 S.Ct. 519, 521, 94 L.Ed. 734, 740 (1950). The determination of whether a member of the venire will be an impartial juror is influenced by many factors. *Simpson*, 827 P.2d at 175. Situations will arise where the judge receives a definite impression of a potential juror which is not reflected in the record. *Id.* In the instant case, despite Bryant's equivocal statements, the trial court was left with the impression that Bryant would be an impartial juror. Because support is found in the record for the trial court's decision, we find no abuse of discretion is shown. *Id.*

■ Additionally, in order for this Court to reverse a conviction or modify a sentence, Powell must show that he was prejudiced by the court's decision. *Id.* Powell claims he was prejudiced by the court's decision because his attorney was forced to remove Bryant with a peremptory challenge, thereby reducing his number of peremptory challenges to his detriment. There is no evidence in the record that Powell was forced to

keep an unacceptable juror after he had exercised all of his peremptory challenges.[5] *Id.; Tibbs v. State*, 819 P.2d 1372, 1379 (Okl. Cr.1991); *Brown v. State*, 743 P.2d 133, 139 (Okl.Cr.1987); *Hawkins v. State*, 717 P.2d 1156, 1158 (Okl.Cr.1986). Therefore, Powell has failed to make a sufficient showing to warrant relief. Accordingly, this proposition of error is denied.

## ISSUES RELATING TO GUILT/INNOCENCE

■ In his first proposition of error Powell argues he suffered extreme prejudice by the introduction of statements made by his non-testifying co-defendant in their joint trial. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). He argues the introduction of the statements violated his right to confront witnesses against him and the statements constitute inadmissible hearsay. The State argues the statements were not inadmissible under *Bruton* because they were not inculpatory.

This Court has repeatedly held that it is error to introduce the statement of one non-testifying co-defendant which incriminates another co-defendant at their joint trial. *Plantz v. State*, 876 P.2d 268, 273 (Okl.Cr. 1994); *Neill v. State*, 827 P.2d 884, 893 (Okl. Cr.1992). *See also Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987). In the present case, Johnson testified that Spears told Powell and him after the beating that they had to kill Thompson because he could testify against them. Powell claims this testimony is inadmissible because he was unable to cross examine Spears. The State correctly points out this is an atypical *Bruton* problem because the statement was made to two other co-defendants rather than the police and does not directly implicate Powell.[6] The statement is,

---

5. Defense counsel did not state that he desired to remove any other jurors through the use of peremptory challenges.

6. This Court has cited the *Bruton* rule as "[i]n a trial where several defendants are jointly prosecuted, it is error to admit the confession of one of the co-defendants, *made outside the presence of the others,* implicating them, and such error is not cured by the court's instruction that the

confession should be considered only in determining the confessor's guilt and not considered as to the others." *Fugett v. State*, 461 P.2d 1002, 1005 (Okl.Cr.1969). *See also Edmondson v. State*, 515 P.2d 1158, 1161 (Okl.Cr.1973); *Monroe v. State*, 512 P.2d 214, 216 (Okl.Cr.1973); *Clark v. State*, 509 P.2d 1398, 1401–02 (Okl.Cr. 1973).

however, inculpatory in that it is circumstantial evidence of intent to murder and therefore falls within the purview of *Bruton.*

■ While the inculpatory statement should not have been admitted, we find the error was harmless. This Court has continually held that when such a confrontation violation exists, the defendant must still demonstrate that the error was prejudicial. *See Keeling v. State,* 810 P.2d 1298, 1302 (Okl.Cr. 1991); *Smith v. State,* 765 P.2d 795, 796 (Okl.Cr.1988); *Parsons v. State,* 740 P.2d 167, 169 (Okl.Cr.1987). When the properly admitted evidence is so overwhelming and the prejudicial effect of the statements is insignificant, the admission of the confession is harmless. *Smith,* 765 P.2d at 796.

In the present case Powell admitted he had decided to "kick Dewayne's ass." He admitted he beat, kicked and stomped Thompson with the others. Powell admitted after the beating it was decided that they would have to kill Thompson. Given Powell's confession and the testimony of the other witnesses, it is inconceivable the admission of Spears' statement contributed to the verdict. Therefore, we find the admission of Spears' statement was harmless beyond a reasonable doubt. Accordingly, this proposition is denied.

■ In his second proposition of error, Powell argues the trial court abused its discretion in denying his motion for severance. Powell argues severance was required because the State intended to introduce the inculpatory statement of Spears, his non-testifying co-defendant. Powell argues the failure to sever resulted in prejudicial *Bruton* error as discussed in Proposition I, *supra.*

At the hearing on the motion to sever, Powell argued he would likely be prejudiced by the introduction of his non-testifying co-defendants' statements. The State countered by arguing the merits of judicial economy, that the statements could be successfully redacted and the moot exception of interlocking confessions. The trial court overruled

Powell's motion for severance without comment.

■ This Court has consistently held the decision to grant or deny severance is left to the sound discretion of the trial court. *Neill,* 827 P.2d at 886. Absent an abuse of discretion resulting in prejudice to the accused, the decision of the trial court will not be disturbed on appeal. *Id.; Cooks v. State,* 699 P.2d 653, 658 (Okl.Cr.1985), *cert. denied,* 474 U.S. 935, 106 S.Ct. 268, 88 L.Ed.2d 275 (1985); *Menefee v. State,* 640 P.2d 1381, 1383 (Okl.Cr.1982). At trial the State painstakingly asked questions specifically designed to avoid *Bruton* errors and elicit non hearsay responses. The trial court obviously felt *Bruton* error could be avoided without severing the trial. The only *Bruton* error cited by Powell is the statement by Johnson that Spears told them they would have to kill Thompson. As stated above, Powell was not prejudiced by the introduction of this statement. Based on the record before us, we cannot find that the trial court abused its discretion in denying Powell's motion to sever. Accordingly, this proposition is denied.

■ Powell argues in his third proposition of error the evidence was insufficient to sustain his First Degree Murder conviction using either a felony murder or a malice murder theory.[7] Powell specifically argues a felony murder conviction must fail because the State failed to prove he intended to rob Thompson using a dangerous weapon, that Thompson was killed during the commission of a robbery with a dangerous weapon or that a knife was used during the commission of the robbery.

While recognizing no showing of actual malice or premeditated intent is necessary to sustain a felony murder conviction, Powell argues there was no credible evidence to prove he intended to rob Thompson using a dangerous weapon. *Freeman v. State,* 876 P.2d 283, 287 (Okl.Cr.), *cert. denied,* — U.S. ——, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994); *Wade v. State,* 581 P.2d 914, 916 (Okl.Cr. 1978). Powell completely disregards the tes-

---

7. This issue routinely arises when separate verdict forms are not used. We affirmatively endorse and strongly urge the use of separate verdict forms for each theory of murder to remedy this problem in future cases.

timony of Hensley and Johnson who testified they heard Powell and Spears talk about beating Thompson and taking his truck prior to the attack. We find this testimony is sufficient evidence to support the finding that Powell intended to rob Thompson.

Powell asserts the State failed to prove Thompson was killed during the commission of a robbery with a dangerous weapon. Powell argues the taking of Thompson's truck and wallet was an afterthought following the struggle and fatal beating. Consequently, he argues the death preceded the robbery and therefore did not occur "during" the course of a robbery with a dangerous weapon. Powell bases his argument on the fact that there were no threats, no intimidation and no demand for money or the truck prior to the beating. Essentially, Powell argues Thompson was dead prior to the robbery and that it is impossible to rob a dead man.

In *Diaz v. State*, 728 P.2d 503, 508 (Okl.Cr. 1986), this Court held the fact that a person robbed by force or fear is rendered unconscious prior to the actual taking of property does not reduce the crime to larceny from the person. Further, it is not necessary that a robbery victim see or hear the taking of his property. *Id.* at 509. The *Diaz* court held the killing may precede, coincide with or follow the robbery and still be done in the commission of robbery with a dangerous weapon. *Id.*

In the instant case a rational jury viewing the evidence in the light most favorable to the State could find the State proved beyond a reasonable doubt all of the essential elements of First Degree Felony Murder with the underlying felony of Robbery with a Dangerous Weapon.[8] *Spuehler v. State*, 709 P.2d 202, 203–04 (Okl.Cr.1985). Hensley and Johnson testified that as they drove out to the cemetery Powell and Spears talked about beating Thompson and taking his pickup.

Hensley testified she heard Powell ask "[w]ho is going to hit him first" as the group walked towards the cemetery. Powell, Spears and Johnson then attacked Thompson. When Powell, Spears and Johnson returned to the pickup, they took Thompson's pickup and retrieved his wallet. This evidence establishes there was a plan to rob and beat Thompson which was then carried out. Clearly, Thompson died during the course of the robbery.

Additionally, Powell admitted he struck, stomped and kicked Thompson. He confessed that after the initial beating he, Spears and Johnson decided to steal Thompson's pickup and kill Thompson. They went back to where Thompson was lying and all three stabbed him. Because two of the stab wounds were perimortem establishing Thompson was not dead when the stabbing began, Powell's admission they decided to kill Thompson and steal his pickup is sufficient to show they killed Thompson during their robbery plan.

Lastly, Powell contends the State failed to prove that a dangerous weapon was used during the commission of the robbery. Powell argues the knife was not used during the commission of the robbery because Thompson was "likely" dead when the knife was produced. Powell maintains reversal is required because the verdict was a general verdict and it cannot be determined whether the jury found the shoes or the knife constituted the dangerous weapon. *State v. Frey*, 178 Wis.2d 729, 505 N.W.2d 786, 793 (App. 1993).

According to Powell's confession, they decided to steal Thompson's pickup and to kill him. A knife was produced and they stabbed Thompson and took his truck. As discussed above because two of the knife wounds were perimortem, the jury could conclude the knife constituted the dangerous weapon used in the commission of the robbery. *Diaz*, 728

---

**8.** The elements of First Degree Felony Murder with the underlying felony of Robbery with a Dangerous Weapon are: First, the death of a human; Second, the death occurred as a result of an act or event which happened in the commission of robbery with a dangerous weapon; Third, caused by the defendant(s) while in the commission of robbery with a dangerous weap-

on; Fourth, wrongful; Fifth, taking; Sixth, carrying away; Seventh, personal property; Eighth, of another; Ninth, from the person or immediate presence of another; Tenth, by force or fear; Eleventh, by use of a loaded/unloaded/imitation firearm, *or* other dangerous weapon. *See* 21 O.S.Supp.1989, § 701.7(B) and 21 O.S.Supp. 1982, § 801.

P.2d at 509. Because this Court accepts all reasonable inferences and credibility choices that tend to support the verdict, *Carter v. State,* 879 P.2d 1234, 1248 (Okl.Cr.1994), we find the evidence sufficiently proved Powell wrongfully took Thompson's pickup from him by force using either his hands and feet [9] or the knife as dangerous weapons.

■ Next, Powell contends his conviction cannot be sustained using a malice murder theory. Powell argues the State failed to prove he killed Thompson with malice aforethought.[10] Powell argues the evidence proved only an intent to "start a fight" with Thompson.

■ "The law infers a design to effect death from the fact of killing unless the circumstances raise a reasonable doubt whether such design existed." *Freeman,* 876 P.2d at 287; 21 O.S.1981 § 702. A design to effect death sufficient to constitute murder can be formed instantly prior to committing any act of aggression. *Freeman,* 876 P.2d at 287; 21 O.S.1981, § 703. This Court has consistently held it is the exclusive province of the jury to weigh the testimony and evidence to determine whether malice aforethought exists. *Cavazos v. State,* 779 P.2d 987, 989 (Okl.Cr.1989); *Carter v. State,* 698 P.2d 22, 24 (Okl.Cr.1985).

Powell told Hensley and Daniels he wanted to assault Thompson. Powell admitted he repeatedly beat, stomped and kicked Thompson. After the initial beating, Powell, Spears and Johnson decided to steal Thompson's truck and to kill him. They went back to Thompson's body and repeatedly stabbed him. Johnson testified they did not initially intend to kill Thompson, but at some point they changed their minds and intended to kill him. Both Daniels and Johnson testified

Powell instigated the beating of Thompson. Powell's own admissions support his conviction for First Degree Malice Murder.

After reviewing the evidence, including the testimony of the eyewitnesses, we find a rational jury could find Powell guilty of First Degree Murder under either a felony murder or a malice murder theory. Accordingly, this proposition is denied.

In his fourth proposition of error Powell argues he was denied due process of law in both the first and second stages of trial because the jury was not instructed to find unanimously that he had committed first degree murder either with malice aforethought or during the course of an armed robbery.[11] This same argument was recently addressed and rejected by this Court in *Neill v. State,* 896 P.2d 537, 552–53 (1994). *See also James v. State,* 637 P.2d 862, 865 (Okl.Cr.1981).

■ We note Powell has waived all but plain error review by his failure to object to the instructions and verdict forms submitted to the jury. *Neill,* 896 P.2d at 552–53. We further note counsel specifically stated he had "no objections" to the court's instructions. As in *Neill,* by failing to bring any potential error to the attention of the trial court and allowing the trial court to cure any such potential error, Powell has failed to properly preserve this issue for appellate review. *Neill,* 896 P.2d at 552–53; *Munson v. State,* 758 P.2d 324, 331–32 (Okl.Cr.1988), *cert. denied,* 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989).

Even assuming the issue was properly preserved for review, this Court has reaffirmed its prior holdings that failure of a jury to indicate the basis of their finding of guilt was not error where there was but a single crime

---

9. *See Pettigrew v. State,* 430 P.2d 808, 813 (Okl. Cr.1967) (holding the manner in which fists and hands are used determines whether they are dangerous weapons); *Smith v. State,* 79 Okl.Cr. 151, 152 P.2d 279, 281 (1944) (holding the manner in which shoes are used determines whether they are dangerous weapons).

10. Malice is that deliberate intention unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof. 21 O.S.Supp.1989, § 701.7(A).

11. We note the State improperly pled the alternative theories of murder in two separate counts. Such error is not reversible because the instructions to the jury informed the jury that a finding of guilt of first degree murder could be returned only upon a finding that the State had proved, beyond a reasonable doubt, all of the elements of both counts 1 and 2. These instructions effectively placed a higher burden on the State to prove both theories of murder. *Crawford v. State,* 840 P.2d 627, 639 (Okl.Cr.1992).

charged, i.e. first degree murder. *Neill*, 896 P.2d at 552–53; *Crawford*, 840 P.2d at 640. "Whether or not [murder] was committed with malice aforethought, or during the commission of a felony goes to the factual basis of the crime." *Neill*, 896 P.2d at 553. When the jury verdict is unanimous that a defendant committed murder in the first degree, such a verdict satisfies due process. *Id.* Further, there is no due process violation when all of the elements of the crime charged were proven. *Id.*

In the present case, Powell was charged, in the alternative, with malice aforethought murder and murder during the commission of a felony armed robbery. Because the State proved both malice and felony murder, we find the jury's failure to indicate the basis of its finding of guilt was not error. *Neill*, 896 P.2d at 552–53. *See also* Proposition III, *supra*.

■ Powell also argues the absence of a specific finding of his intent to kill in the jury's general verdict violates the distinction between intentional murder and unintentional murder as recognized by the United States Supreme Court in *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987) and *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).[12] He argues because he did not receive an *Enmund* instruction, his death sentence cannot stand because the jury may have given him death even though they believed the killing was committed during the armed robbery and was unintentional. In *Crawford*, 840 P.2d at 640, this Court reiterated its view that *Enmund* is not an absolute ban on the imposition of the death penalty on one who is convicted of first degree murder under the felony murder doctrine. Because Powell was not entitled to an *Enmund* instruction, we find his death sentence is constitutionally valid despite the general verdict of the jury. *See* Proposition XIV, *infra*.

■ In his fifth proposition of error Powell argues prosecutorial misconduct during both stages of trial deprived him of a fair trial. Powell cites numerous instances during both first stage and second stage closing arguments in which he complains the prosecutor improperly encouraged the jurors to sympathize with the victim, gave personal opinions of his guilt and the appropriateness of the death penalty, argued the jury had a moral duty to find for the State, commented on his right to silence and denigrated his mitigating evidence.

Powell failed to object to any of the remarks of which he now complains, and thus waives review of all but plain error. *Mitchell v. State*, 884 P.2d 1186, 1201 (Okl.Cr.1994). We have carefully reviewed the State's comments and find no error which denied Powell a constitutional or statutory right or contributed to the verdict. *Id.* Although no harmful error was found, we feel compelled to address the propriety of the prosecutor's remarks concerning victim sympathy and the admission of victim impact evidence.

Powell argues the prosecutor inflamed the jury in his first stage closing argument by arguing Thompson was a good and decent "kid" and Powell and Spears were bad "kids." Powell further claims the prosecutor introduced improper victim impact evidence in first stage by asking Thompson's mother about his character and personal habits.

In the twelve (12) pages of transcript cited by Powell, the prosecutor described Thompson as "young," "clean-cut," "active in his church," "want[ing] to belong," "not the same as the people he was with," "charitable," "loving," a "decent human being," "shy," "susceptible to peer pressure," "out of his element," "socially awkward, but not deviant or delinquent" and a "good kid." The prosecutor made repeated personal references to Thompson. The prosecutor also called Thompson's mother in first stage to testify and identify his clothing and other personal belongings. During her examination the prosecutor asked her to tell the jury about her son. Mrs. Thompson told the jury Thompson was a student at the local vo-tech studying welding and carpentry. She told

12. *Tison* and *Enmund* hold that a defendant cannot receive a death sentence for felony murder unless the defendant knew the killing would take place, knew lethal force would be used, killed, attempted killing, or actively participated in the felony committed and displayed a reckless indifference to human life. *See, Allen v. State*, 874 P.2d 60, 64 (Okl.Cr.1994).

the jurors Thompson was a slow learner and felt inadequate about his abilities. Mrs. Thompson also told the jury about Thompson's church attendance, recent break-up with his girlfriend, personal grooming habits and obedient nature.

■ We have held it is improper for the prosecution to ask jurors to have sympathy for victims. *Pickens v. State*, 850 P.2d 328, 342 (Okl.Cr.1993), *cert. denied*, — U.S. ——, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994). While victim impact evidence may be appropriate in the sentencing phase of trial, it is error to introduce victim impact evidence in the guilt/innocence phase. *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720, 736 (1991). While the prosecution and the defense have the right to discuss fully from their standpoint the evidence, and the inferences and deductions arising therefrom, the guilt/innocence phase of trial is no place for subtle appeals for victim sympathy. *Pickens*, 850 P.2d at 342; *Carol v. State*, 756 P.2d 614, 617 (Okl.Cr. 1988).

■ As discussed above we considered this error in light of the evidence to determine whether the remarks can be said to have influenced the verdict against Powell. *Pickens*, 850 P.2d at 343; *Thornton v. State*, 668 P.2d 344, 346 (Okl.Cr.1983). Prosecutorial misconduct will not cause a reversal of judgment or modification of sentence unless its cumulative effect is such as to deprive the defendant of a fair trial and fair sentencing proceeding. *Pickens*, 850 P.2d at 343. *See also Williams v. State*, 658 P.2d 499, 501 (Okl.Cr.1983). Such was not the case here. Although the comments were nothing but reckless attempts to invoke victim sympathy, in light of the overwhelming evidence of guilt, the remarks did not contribute to the verdict or affect the fairness of the trial. Therefore, we find relief is not warranted.

Powell also claims the prosecutor improperly argued victim impact evidence in the punishment stage of trial in contravention of existing case law. Powell recognizes the Supreme Court's decision in *Payne v. Tennessee*, 501 U.S. at 827, 111 S.Ct. at 2609, 115 L.Ed.2d at 736,[13] but argues this was not the law at the time of his trial and that the prosecutor's appeals for victim sympathy deprived him of a fair sentencing hearing. Powell again failed to object to any of the remarks of which he now complains, and thus waives review of all but plain error. *Mitchell*, 884 P.2d at 1201.

While the prosecutor asked the jury to remember Thompson during its deliberations, the focus of the argument was the strength of the aggravating circumstances and the weakness of the mitigating evidence. The few remarks to consider Thompson during deliberations did not contribute to the jury's verdict. Because we are unable to conclude that the remarks were so prejudicial as to adversely affect the fundamental fairness and impartiality of the proceedings, we find any error harmless beyond a reasonable doubt.

■ In his sixth proposition of error, Powell argues the trial court erred in failing to instruct the jury on the defense of intoxication and the lesser included offense of first degree diminished capacity manslaughter. Specifically, Powell argues that his consumption of alcohol during the evening of the murder left him so intoxicated that he was unable to form the specific intent to commit malice aforethought murder.

■ Although Powell states the record is unclear whether his lawyer requested instructions on voluntary intoxication and first degree diminished capacity manslaughter, the record shows the trial court specifically asked counsel if he had any objections to the instructions which did not include instructions on voluntary intoxication and first degree diminished capacity manslaughter. Counsel responded, "as the instructions are finalized, attorney for Dudley Powell has no objections." Despite counsel's failure to request intoxication and manslaughter instructions, the trial court must correctly instruct

---

13. The *Payne* court held that "[a] State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." *Payne*, 501 U.S. at 827, 111 S.Ct. at 2609, 115 L.Ed.2d at 736.

the jury on the salient features of the law raised by the evidence even without a request by the defense. *Crawford,* 840 P.2d at 638; *Atterberry v. State,* 731 P.2d 420, 422 (Okl.Cr.1986) (citing *Wing v. State,* 280 P.2d 740, 747 (Okl.Cr.1955)).

■■■■ Jury instructions on lesser included offenses or theories of defense need only be given when there is evidence in the record to support such instructions. *Bryson v. State,* 876 P.2d 240, 255 (Okl.Cr.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995); *Foster v. State,* 714 P.2d 1031 (Okl.Cr.), *cert. denied,* 479 U.S. 873, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986); *Green v. State,* 611 P.2d 262, 266 (Okl.Cr.1980), *cert. denied,* 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981). It is the trial court's responsibility to consider the evidence to determine if such instructions are warranted. *Bryson,* 876 P.2d at 255; *Liles v. State,* 702 P.2d 1025 (Okl.Cr.1985), *cert. denied,* 476 U.S. 1164, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986). "This Court will not interfere with the trial court's judgment if the instructions as a whole, accurately state the applicable law." *Bryson,* 876 P.2d at 255. *See also Pham v. State,* 752 P.2d 830, 832 (Okl.Cr. 1988). Because Powell presented no evidence in the first stage of trial, voluntary intoxication and first degree diminished capacity manslaughter instructions would be warranted only if the evidence presented by the State established Powell was so intoxicated that his mental abilities were totally overcome and intoxication prevented him from forming malice. *Bryson,* 876 P.2d at 255.

Our review of the evidence shows that it was not sufficient to support voluntary intoxication and first degree diminished capacity manslaughter instructions. While testimony was given to the effect that Powell had consumed beer and alcohol the night of the murder, the record does not support a finding, based solely on evidence presented by the State, that at the time of the murder Powell was under the influence of any intoxicant to the extent that he was unable to form the necessary intent to commit first degree malice murder. *See Hogan v. State,* 877 P.2d 1157, 1161 (Okl.Cr.1994); *Bryson,* 876 P.2d at 255; *Mann v. State,* 749 P.2d 1151, 1156–

57 (Okl.Cr.1988), *cert. denied,* 488 U.S. 877, 109 S.Ct. 193, 102 L.Ed.2d 163 (1988). Hensley, Daniels and Johnson described Powell as "feeling good" but not drunk, half drunk and half sober, and having a "pretty good buzz on." Johnson testified he knew what he was doing and the risks of his conduct and that at some point he, Spears and Powell intended to kill Thompson. Further, Powell never told Officer Wigley during his confession that he was drunk and did not intend to kill Thompson. The testimony at trial demonstrated Powell was in control of his mental faculties and not in an advanced state of intoxication. Accordingly, the trial court, in a proper exercise of its judicial duty, did not err in finding insufficient evidence to warrant an instruction on the defense of intoxication and the lesser offense of first degree diminished capacity manslaughter. *Crawford,* 840 P.2d at 638; *Mann,* 749 P.2d at 1156; *Irvin v. State,* 617 P.2d 588, 596 (Okl.Cr.1980). Consequently, we find this proposition is without merit.

■■■■ In his seventh proposition of error Powell argues the trial court erred in giving a flight instruction because there was no evidence he attempted to leave the scene of the murder or conceal himself with a consciousness of guilt. The State argues Powell fled from the scene of the crime and engaged in a plan to transport and dispose of evidence, primarily Thompson's pickup truck.

In *Mitchell v. State,* 876 P.2d 682 (Okl.Cr. 1993), this Court addressed the propriety of flight instructions. The *Mitchell* court noted that flight instructions are and have been appropriate in cases where a defendant makes statements concerning his departure from the crime scene in a voluntary confession. *Id.* at 684. *See also Potter v. State,* 511 P.2d 1120, 1125 (Okl.Cr.1973); *Denney v. State,* 346 P.2d 359, 366 (Okl.Cr.1959). Under these circumstances, it is the defendant who either admits to the alleged crime and/or places himself at the scene, thus removing any assumptions that he was present and departed. In the present case Powell confessed to being at and participating in the crime in a voluntary statement which was admitted at trial. Testimony established Powell, Spears and Johnson killed Thompson

because Thompson could testify against them. After killing Thompson, Powell and Spears fled from the scene and planned the disposal of incriminating evidence. Because Powell admitted his presence and participation in the murder, administering a flight instruction was not error. *Mitchell,* 876 P.2d at 684. Accordingly, this proposition is denied.

■ In his eighth proposition of error, Powell contends the trial court erred in admitting photographic evidence in both the first and second stages of trial over defense counsel's objection. Powell specifically assigns error to the admission of State's Exhibit Nos. 2 and 3 in the first stage of trial. State's Exhibits 2 and 3 are photographs depicting Thompson as he was found by the police on the side of the road near Klondike Cemetery. Powell argues that State's Exhibits 2 and 3 were not relevant in the first stage of trial because there was no dispute concerning Thompson's identity or the cause of death. He further asserts he was prejudiced by the repetitive nature of the two photographs.

This Court has consistently held the test for admissibility of a photograph is not whether it is gruesome or inflammatory, but whether its probative value is substantially outweighed by the danger of unfair prejudice. *Hooks v. State,* 862 P.2d 1273, 1280 (Okl.Cr.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994); *Clayton v. State,* 840 P.2d 18, 28 (Okl.Cr.1992), *cert. denied,* 507 U.S. 1008, 113 S.Ct. 1655, 123 L.Ed.2d 275 (1993). "Whether to introduce photographs of a homicide victim is a decision largely within the trial court's discretion." *Hooks,* 862 P.2d at 1280; *Bennett v. State,* 652 P.2d 1237, 1239 (Okl.Cr.1982).

In *Hooks,* this Court rejected a similar argument that photographs were inadmissible because neither the identity of the victim nor the injuries sustained were matters contested at trial. *Hooks,* 862 P.2d at 1281. *See also Williamson v. State,* 812 P.2d 384, 400 (Okl.Cr.1991), *cert. denied,* 503 U.S. 973, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1992). This Court found photographs depicting murder victims can be probative in many respects. *Hooks,* 862 P.2d at 1281. Homicide photo-

graphs can show the nature, extent and location of wounds, establish the corpus delicti, depict the crime scene and corroborate a medical examiner's testimony. *Id.; Nguyen v. State,* 769 P.2d 167, 171 (Okl.Cr.1988), *cert. denied,* 492 U.S. 925, 109 S.Ct. 3264, 106 L.Ed.2d 609 (1989). In *Williamson,* 812 P.2d at 400, this Court found pictures of the murder victim are always probative in establishing the corpus delicti of the crime.

In the present case, eight (8) photographs of the crime scene and the victim as discovered at the scene were identified. Powell objected to Exhibits 2 and 3 which depicted Thompson arguing they had no probative value and were gruesome. Contrary to Powell's assertions the photographs were probative because they showed the crime scene and the victim as discovered by law enforcement officers. *Id.* Further, Powell was not prejudiced by the repetitive nature of the two photographs. Although this Court has held there is a point in the display of relevant photographs where the photographs are so duplicative that a needless repetition can inflame the jury and result in error, the introduction of two photographs does not reach that point. *Neill,* 896 P.2d at 552–53. Powell has failed to demonstrate that he was prejudiced in any of his substantial rights by the slight repetition of the two photographs. Accordingly, we find no abuse of discretion in the admission of State's Exhibit Nos. 2 and 3 in the first stage of trial. *Id.*

■ More troubling are State's Exhibit Nos. 37, 42, 45, 46, 50 and 52 introduced in the second stage of trial to prove that the murder was especially heinous, atrocious or cruel. To prove a murder was especially heinous, atrocious or cruel, the State must introduce competent evidence indicating the victim's death was preceded by torture or serious physical abuse, which may include the infliction of either great physical anguish or extreme mental cruelty. *Perry v. State,* 893 P.2d 521, 533–34 (Okl.Cr.1995); *Booker v. State,* 851 P.2d 544, 548 (Okl.Cr.1993); *Battenfield v. State,* 816 P.2d 555, 565 (Okl.Cr.1991), *cert. denied,* 503 U.S. 943, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992). To support a finding of serious physical abuse, the State must show the victim endured *conscious*

physical suffering prior to death. *Stafford v. State,* 832 P.2d 20, 23 (Okl.Cr.1992).

Exhibits 37, 42, 45, 46, 50 and 52 are admittedly gruesome. They depict Thompson from various angles and focus on the numerous post mortem stab wounds Thompson sustained. The photographs show several large gash wounds and Thompson's exposed intestines. In three of the photographs one can also see Thompson's swollen face and black eye.[14]

In *Bryson,* 876 P.2d at 258, this Court upheld the introduction of gruesome photographs to prove a murder was especially heinous, atrocious or cruel because they showed the decedent's death was preceded by torture or serious physical abuse. The *Bryson* court also found the pictures somehow corroborated the medical examiner's testimony that the decedent was still alive when he was set on fire. *Id.* As in *Bryson* the photographs in the instant case were relevant and helped to prove Thompson suffered abuse prior to his death. Because there was testimony Thompson moaned and suffered two perimortem stab wounds, the photographs were properly admitted to prove Thompson's death was preceded by serious physical abuse. *See also, Ellis v. State,* 867 P.2d 1289, 1299 (Okl.Cr.1992), *cert. denied,* — U.S. —, 115 S.Ct. 178, 130 L.Ed.2d 113 (1994).

These photographs are not, however, probative of whether Thompson was conscious during the beating which is the critical inquiry in determining whether a murder was especially heinous, atrocious or cruel. The probative value of these photographs is very slight especially in light of their gruesome nature. Their probative value scarcely exceeds their prejudicial effect. We note the introduction of the six photographs came very close to causing a second sentencing hearing given the paucity of evidence supporting the especially heinous, atrocious or cruel aggravator. Because such photographs were not admitted in first stage, they were more shocking when seen for the first time in the punishment stage. As this Court said in *Pickens,* 850 P.2d at 344, "[m]ore consideration should be given in formulating a trial strategy that will ensure a conviction, once obtained at trial, will meet the requirements of appellate review. This type of trial preparation will more admirably fulfill the oath of office and serve the citizens of this State, especially the victims of criminal offenses." However, because the probative value of these photographs outweigh their prejudicial effect, we must reject Powell's proposition of error.

In his tenth proposition of error Powell contends he was denied effective assistance of counsel as guaranteed by the Sixth Amendment. Powell cites defense counsel's failure to object to Spears' hearsay statement, failure to request voluntary intoxication and first degree diminished capacity manslaughter instructions, failure to request an *Enmund* instruction and failure to object to various instances of prosecutorial misconduct as evidence of deficient performance.

■ To successfully prove ineffective assistance of counsel, Powell must satisfy the two-prong test enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He must show: (1) that defense counsel's performance was deficient, which requires showing that counsel made errors so egregious that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) that he was prejudiced by the deficient performance, which requires showing that counsel's errors deprived him of a fair trial with a reliable outcome. *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Failure to prove either of these elements is fatal to Powell's entire claim.

■ From the record before us, Powell cannot meet his burden. As discussed in Propositions I and II, *supra,* Powell was not prejudiced by the introduction of Spears' hearsay statement because he admitted he intended to kill Thompson in his own confession. Voluntary intoxication, first degree diminished capacity manslaughter and *Enmund/Tison* instructions were not warranted by the evidence. *See* Proposition VI, *supra* and Proposition XIV, *infra.* Further, we have concluded Powell was not prejudiced by

14. *See* State's Exhs. 42, 46 and 50.

the remarks of the prosecutor. *See* Proposition V, *supra.* We have carefully reviewed the record and find counsel exercised the skill, judgment and diligence of a competent defense attorney under the circumstances. Because Powell received effective assistance of counsel, we find this proposition is without merit.

## ISSUES RELATING TO PUNISHMENT

█ In his eleventh proposition of error Powell contends the State failed to prove the aggravating circumstance that "the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution." 21 O.S.1981, § 701.12(5). Powell claims the only evidence supporting this aggravator was Spears' improperly admitted hearsay statement that they would have to kill Thompson because he could testify against them and Johnson's testimony that in his own mind he killed Thompson to get rid of a witness. Powell argues this evidence is insufficient to prove he killed Thompson to avoid arrest or prosecution.

█ The State alone bears the burden of proving beyond a reasonable doubt the aggravating circumstances it elects to charge. *Perry,* 893 P.2d at 533. On appeal, we review the sufficiency of the evidence in the light most favorable to the State to determine whether there was any competent evidence to support the jury's finding of the aggravating circumstance. *Id.; Bryson,* 876 P.2d at 259.

█ To support a finding of this aggravating circumstance the State must prove the defendant killed in order to avoid arrest or prosecution. *Carter,* 879 P.2d at 1250. The defendant's intent is critical. *Munson v. State,* 758 P.2d 324, 335 (Okl.Cr.1988), *cert. denied,* 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989); *Stouffer v. State,* 738 P.2d 1349, 1361–62 (Okl.Cr.1987), *cert. denied,* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988); *Banks v. State,* 701 P.2d 418, 426 (Okl.Cr.1985). However, as in other areas of criminal law, the defendant's intent can be proved by circumstantial evidence. *Snow v. State,* 876 P.2d 291, 299 (Okl.Cr. 1994) and cases cited therein. There must

also be a predicate crime, separate from the murder, for which the defendant seeks to avoid arrest or prosecution. *Barnett v. State,* 853 P.2d 226, 233 (Okl.Cr.1993).

In the instant case the evidence showed Powell and Spears discussed beating Thompson and taking his pickup truck before they arrived at the cemetery. At the cemetery Powell told Spears, Johnson and Daniels he would initiate the beating and then they should join in. Powell then carried out his plan and struck Thompson. Powell confessed "they" decided to steal Thompson's pickup and to kill him. After the murder Powell participated in discussions about selling Thompson's pickup in Tulsa and disposing of Thompson's wallet and the knife. From this evidence a rational jury could find Powell had motive to rob Thompson, stopped at the cemetery to commit the robbery, initiated the beating, killed Thompson to avoid arrest for the theft of the truck, took Thompson's truck and wallet and helped dispose of incriminating evidence. *Accord Carter,* 879 P.2d at 1234; *Fox v. State,* 779 P.2d 562, 575–76 (Okl.Cr.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990); *Munson,* 758 P.2d at 335. Because we find ample evidence to support the jury's finding of this aggravator, this proposition of error is denied.

█ In his twelfth proposition of error, Powell asserts that insufficient evidence was presented to support the especially heinous, atrocious or cruel aggravating circumstance. The State concedes the medical testimony is inconclusive, but argues the testimony of Mickey Daniels clearly established Thompson suffered conscious physical anguish prior to his death. *Nuckols v. State,* 805 P.2d 672 (Okl.Cr.1991), *cert. denied,* 500 U.S. 960, 111 S.Ct. 2276, 114 L.Ed.2d 727 (1991).

As discussed above the State bears the burden of proving beyond a reasonable doubt the aggravating circumstances it elects to charge. *Perry,* 893 P.2d at 533. *See also* Oklahoma Uniform Jury Instruction–Criminal (OUJI–CR) 435. We must now determine whether there was any competent evidence to support the jury's finding the murder was especially heinous, atrocious or cru-

el. *Perry,* 893 P.2d at 533; *Bryson,* 876 P.2d at 259.

■ In order for a jury to find that a murder was especially heinous, atrocious or cruel, the State must introduce competent evidence indicating the victim's death was preceded by torture or serious physical abuse, which may include the infliction of either great physical suffering or extreme mental cruelty. *Perry,* 893 P.2d at 533–34; *Booker,* 851 P.2d at 548; *Battenfield,* 816 P.2d at 565. Serious physical abuse requires evidence of *conscious* physical suffering. *Perry,* 893 P.2d at 534; *Stafford,* 832 P.2d at 23. As we stated in *Perry,* it is critical the State prove the victim consciously suffered prior to death. *Perry,* 893 P.2d at 534. Prosecutors have proved this aggravator by introducing evidence the victim suffered numerous defensive wounds indicating that the victim was conscious and attempted to fight off her attacker; statements from the defendant indicating the victim consciously suffered serious physical abuse or extreme mental cruelty prior to death; witness testimony that the victim was alive and conscious at the time the physical abuse was inflicted; or medical evidence that the victim was conscious during the infliction of serious physical injury. *Id.* and cases cited therein.

In the present case there was sufficient evidence to support the especially heinous, atrocious or cruel aggravating circumstance. There was a plethora of evidence Thompson endured serious physical anguish prior to his death. Further, there was evidence Thompson was conscious during the beating. Mickey Daniels testified when asked if Thompson made any noises or sounds during the beating, "[h]e was—he was laying there. And he was hollering. He have (sic) wasn't really saying any words, he was just moaning all around." Daniels again characterized the noises Thompson made as "hollering" and "moaning" and noted he could tell Thompson was hurting. Viewing Daniels' testimony in the light most favorable to the State, *Bryson,* 876 P.2d at 259, we find such testimony sufficient to allow a rational jury to conclude Thompson was conscious during the beating which preceded his death. Accordingly, this proposition of error is denied.

In his thirteenth proposition of error, Powell challenges the jury instruction in the second stage of trial which defined the aggravating circumstance "especially heinous, atrocious, or cruel". Powell acknowledges the instruction given in this case limited the application of this aggravator by stating the "phrase especially heinous, atrocious, or cruel is directed to those crimes where the death of the victim was preceded by torture or serious physical abuse." Powell claims, however, the instruction remains unconstitutionally vague. We recently rejected this same argument in *Mayes v. State,* 887 P.2d 1288, 1319 (Okl.Cr.1994). *See also Nuckols,* 805 P.2d at 674. We find the law is settled and see no need to address this issue again. *Mayes,* 887 P.2d at 1319 and cases cited therein. Accordingly, this proposition is denied.

Powell also argues the addition of the "serious physical abuse requirement" does not and cannot limit the unconstitutionally vague definitions of the terms "heinous", "atrocious" and "cruel." This argument has been consistently rejected by this Court and was recently rejected in *Long v. State,* 883 P.2d 167, 174–75 (Okl.Cr.1994) and cases cited therein. Again, the law is settled. We find this proposition is without merit.

■ In his fourteenth proposition of error, Powell contends the trial court committed reversible error in failing to instruct the jury in the punishment stage of the trial that Powell could not be sentenced to death unless the jury found he killed Thompson, intended that Thompson be killed, intended that lethal force be used or acted with reckless indifference to human life. *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) and *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). In *Enmund,* 458 U.S. at 797, 102 S.Ct. at 3376, the Supreme Court held that a defendant cannot receive a sentence of death for felony murder committed by an accomplice unless the defendant knew the killing would take place, knew lethal force would be used, killed, or attempted killing. *See Allen,* 874 P.2d at 64. In *Tison,* 481 U.S. at 158, 107 S.Ct. at 1688, the Supreme Court modified *Enmund* holding that a defendant who

was a major participant in the felony committed, who displayed reckless indifference to human life, may be sufficiently culpable to receive the death penalty. *See also McCracken v. State,* 887 P.2d 323, 332 (Okl. Cr.1994).

In *Stiles v. State,* 829 P.2d 984, 992 (Okl. Cr.1992), this Court held the *Enmund* holding inapplicable to an appellant who entered a restaurant with a lethal weapon and intentionally fired at a person. Like in *Stiles* the *Enmund/Tison* holdings do not apply to Powell because he admitted his intent to kill Thompson and was a major participant in the felony who displayed reckless indifference to Thompson's life. By Powell's own admission he instigated the beating of Thompson, repeatedly struck, kicked and stomped him, intended to kill him and stabbed him. Because no *Enmund/Tison* instruction was warranted, the trial court did not err in failing to so instruct.

Lastly, Powell claims the second stage jury instructions violated his constitutional rights. Acknowledging the prior decisions of this Court, Powell nonetheless asks this Court to reexamine five second stage instructions.

First, Powell argues failure to instruct a jury that it has the option to return a life sentence regardless of its findings regarding aggravating and mitigating circumstances violates the Eighth and Fourteenth Amendments of the United States Constitution. *See* 21 O.S.1991, § 701.11. This exact proposition of error was rejected in *Thomas v. State,* 811 P.2d 1337, 1352 (Okl.Cr.1991), *cert. denied,* 502 U.S. 1041, 112 S.Ct. 895, 116 L.Ed.2d 798 (1992). *See also Romano v. State,* 847 P.2d 368, 392 (Okl.Cr.1993), *aff'd,* — U.S. —, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1993); *Johnson v. State,* 731 P.2d 993, 1003 (Okl.Cr.1987), *cert. denied,* 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987). The law is settled and we see no need to revisit this issue.

Second, Powell argues the antisympathy instruction precluded the jury from considering his mitigating evidence in violation of the Eighth and Fourteenth Amendment. This Court has consistently rejected this argument. *See Mayes,* 887 P.2d at 1319; *Revilla v. State,* 877 P.2d 1143, 1153 (Okl.Cr.1994),

*cert. denied,* — U.S. —, 115 S.Ct. 764, 130 L.Ed.2d 661 (1995). Again, we are unpersuaded to revisit this issue.

Powell next claims the word "may" included in Instruction No. 7 gave the jury the choice of whether or not to consider mitigating evidence. Powell cites *Eddings v. Oklahoma,* 455 U.S. 104, 117, 102 S.Ct. 869, 878, 71 L.Ed.2d 1 (1982) in support of his argument that a sentencer cannot fail to consider relevant mitigating circumstances without violating the Eighth Amendment.

This Court has recently rejected this specific argument by upholding similar instructions in *Mayes,* 887 P.2d at 1320. *See also Malone v. State,* 876 P.2d 707, 714 (Okl.Cr. 1994); *Revilla,* 877 P.2d at 1154. Therefore, we find this contention is without merit.

Fourth, Powell argues that because the instructions regarding mitigating circumstances were mixed in with the instructions regarding aggravating circumstances, the jury was led to believe it must unanimously find the existence of mitigating circumstances before it could consider them. This very argument was recently addressed at length and rejected in *Mayes,* 887 P.2d at 1320-21. *See also Harjo v. State,* 882 P.2d 1067, 1081 (Okl.Cr.1994); *Stiles,* 829 P.2d at 997. The law is settled and we decline to revisit this issue.

Finally, Powell contends the instruction on weighing aggravating circumstances and mitigating evidence failed to set forth the proper burden of proof as they did not inform the jury that the State had the burden of proving beyond a reasonable doubt that the aggravating circumstances must outweigh the mitigating evidence. In *Malone,* 876 P.2d at 715, this Court held that the absence of specific standards for balancing aggravating and mitigating circumstances does not violate an appellant's constitutional rights. Further, this precise argument was recently rejected in *Revilla,* 877 P.2d at 1153. *See also Romano,* 847 P.2d at 392. We decline to revisit this issue and find this proposition is without merit.

## MANDATORY SENTENCE REVIEW

Pursuant to 21 O.S.1991, § 701.13(C), we must determine (1) whether

the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of aggravating circumstances as enumerated in 21 O.S.Supp.1991, § 701.12. As noted above the State presented sufficient evidence to prove Powell murdered Thompson to avoid arrest or prosecution and that the murder was especially heinous, atrocious or cruel. *See* PROPOSITIONS XI AND XII, *supra*. In mitigation Powell presented evidence of his youth, intoxication at the time of the murder, incomplete public education, lack of a father figure during his life, loving relationships with his family, his potential for rehabilitation, and that he had never previously been convicted of a violent crime. After carefully reweighing the aggravating circumstances and all mitigating evidence, we find the aggravating circumstances outweigh the mitigating evidence and that the sentence of death is factually substantiated and appropriate. Finding no error warranting reversal or modification, the Judgment and Sentence is **AFFIRMED.**

JOHNSON, P.J., CHAPEL, V.P.J., and LUMPKIN and LANE, JJ., concur.

### *ORDER GRANTING REHEARING TO CORRECT OMISSION AND DIRECTING ISSUANCE OF MANDATE*

Petitioner filed a Petition for Rehearing in the above styled case after his conviction for Murder in the first degree (21 O.S.Supp. 1989, § 701.7) and sentence of death was affirmed by this Court on July 14, 1995. A petition for rehearing may only be filed if 1) some question decisive of the case and duly submitted by the attorney of record has been overlooked by the Court, or 2) the decision is in conflict with an express statute or controlling decision to which the attention of this Court was not called either in the brief or in oral argument. Rule 3.14(B), *Rules of the Court of Criminal Appeals,* 22 O.S.Supp. 1994, Ch. 18, App. We grant rehearing to correct an omission in this Court's opinion.

In his Petition for Rehearing, Petitioner correctly claims this Court made no specific finding that the admission of co-defendant Spears' hearsay statement was harmless in second stage.[1] After reviewing the record, it is clear the erroneous admission of Spears' hearsay statement did not contribute to the verdict rendered or the sentence imposed. Therefore, we find the admission of Spears' statement was harmless beyond a reasonable doubt in both the first and second stages of trial.

Petitioner also asserts that this Court employed an erroneous standard of review when it reviewed the sufficiency of the evidence supporting the aggravating circumstances found in this matter.[2] Petitioner asserts the correct standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the aggravating circumstance beyond a reasonable doubt. *Lewis v. Jeffers,* 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). We have reviewed the opinion and find this standard was employed by this Court.[3] We find the Petition for Rehearing should be and is hereby **GRANTED,** but no relief is warranted.

**IT IS THEREFORE THE ORDER OF THIS COURT** that this Petition for Rehearing is GRANTED with no relief required and the court clerk should issue the mandate.

**IT IS SO ORDERED.**

/s/ Charles A. Johnson
CHARLES A. JOHNSON
Presiding Judge

/s/ Charles S. Chapel
CHARLES S. CHAPEL
Vice Presiding Judge

1. In our opinion we found "[g]iven Powell's confession and the testimony of the other witnesses, it is inconceivable the admission of Spears' statement contributed to the verdict." *Powell v. State,* 906 P.2d 765, 773 (Okl.Cr.1995).

2. The jury found: [1] the murder was especially heinous, atrocious, or cruel; and [2] the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. 21 O.S.1981, § 701.12(4) and (5).

3. *Powell v. State,* 906 P.2d at 784.

/s/ Gary L. Lumpkin
GARY L. LUMPKIN
Judge

/s/ James F. Lane
JAMES F. LANE
Judge

/s/ Reta M. Strubhar
RETA M. STRUBHAR
Judge